# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

ANTONIO D. STEPHENS,
          *Defendant-Appellant.*

No. 04-50170

D.C. No.
CR-00-03718

OPINION

Appeal from the United States District Court
for the Southern District of California
M. James Lorenz, District Judge, Presiding

Argued and Submitted
January 12, 2005—Pasadena, California

Filed September 2, 2005

Before: Stephen Reinhardt and Richard R. Clifton,
Circuit Judges, and Charles R. Weiner, District Judge.*

Opinion by Judge Weiner;
Partial Concurrence and Partial Dissent by Judge Clifton

---

*The Honorable Charles R. Weiner, Senior United States District Judge
for the Eastern District of Pennsylvania, sitting by designation.

12079

**COUNSEL**

Alice Fontier, Federal Defenders of San Diego, Inc., San Diego, California, for defendant-appellant Antonio Damon Stephens.

Carol C. Lam, United States Attorney, Roger W. Haines, Jr., Assistant United States Attorney, Chief Appellate Section Criminal Division, Carol M. Lee, Assistant United States Attorney, San Diego, California, for plaintiff-appellee United States of America.

## OPINION

WEINER, Senior District Judge:

### I.

Antonio Damon Stephens appeals the sentence imposed by the district court upon the revocation of his supervised release. Stephens was on supervised release as part of his sentence following the entry of a guilty plea to importation of marijuana. The issue we confront in this appeal is whether the district court improperly delegated its authority to determine the number, frequency, timing, and manner of substance abuse testing and treatment to which Stephens would be subjected during the term of his supervised release. We hold that the requirement that Stephens participate in substance abuse treatment, including in-treatment drug testing, was an order of the district court. Thus, there was no improper delegation of Article III judicial authority to the probation department as to whether Stephens would participate. We also hold that, as part of a court ordered treatment program, a defendant may be required to undergo regular drug testing, in addition to the number of tests that are ordered as part of his supervised release. However, the testing condition, as imposed here, was an improper delegation of the district court's duty to set the maximum number of *non-treatment* drug tests to which Stephens would be subjected during the course of his supervised release. Accordingly, we vacate the sentence and remand.

### II.

Stephens was indicted on December 6, 2000, on one count of importing approximately 45.25 kilos of marijuana, in viola-

tion of 21 U.S.C. §§ 952 and 960, and one count of possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). He pled guilty to count 1 of the indictment and was sentenced on June 12, 2001, to one year and one day imprisonment, and three years supervised release. A condition of his supervised release stated:

> The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as directed by the probation officer.

He was also required to "participate in a drug and alcohol abuse treatment and counseling program, including urinalysis testing, as directed by the Probation Officer," as well as a "program of mental health treatment as directed by the probation officer."

Stephens was released from custody on September 25, 2001, to a Community Corrections Center, where he resided until November 12, 2001. On December 6 and 14, 2001, and again on January 2 and 22, 2002, he submitted urine samples that tested positive for cocaine. The probation officer referred him for relapse group counseling. Stephens voluntarily entered an outpatient drug treatment program, however he submitted a positive urine while in the program. Stephens waived a hearing and agreed to modify the conditions of his supervised release, agreeing to enter a residential treatment program. The modification was approved by the court on March 18, 2002.

On December 15, 2003, Stephens' probation officer filed a petition with the court for a warrant to arrest Stephens. The probation officer alleged Stephens violated his supervised release by submitting four dirty urine samples (cocaine), failed to submit urine samples on four other occasions, changed his residence without notification, failed to report,

and failed to submit a monthly supervision report. He was arrested on December 22, 2003. The court dismissed the first two allegations (regarding the urine samples) and sentenced Stephens to four months in custody and two years supervised release on the remaining allegations. The court reimposed the same special conditions at issue. Stephens was released from custody on June 9, 2004, to a community corrections center where he is again subjected to urinalysis testing.

## III.

The district court's application of the Sentencing Guidelines is reviewed de novo. *United States v. Nielsen*, 371 F.3d 574, 582 (9th Cir. 2004). A district court's decision to impose an available condition of supervised release is typically reviewed for abuse of discretion. *United States v. Johnson*, 998 F.2d 696, 697 (9th Cir. 1993); *United States v. Gallaher*, 275 F.3d 784, 793 (9th Cir. 2001) (district court has discretion to impose condition reasonably related to factors set out in 18 U.S.C. § 3553(a)).[1]

## IV.

[1] The statute governing the mandatory conditions of supervised release, 18 U.S.C. § 3583(d), provides in part that:

> The court shall also order, as an explicit condition of supervised release, that the defendant refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of release on supervised release and at least 2 periodic drug tests thereafter *(as determined by the court)* for use of a controlled substance. The condition stated in the pre-

---

[1]Where the defendant fails to object to a supervised release condition, our review is for plain error. *United States v. Rearden*, 349 F.3d 608, 618 (9th Cir. 2003). Here, however, Stevens preserved the issue of the illegality of his supervised release conditions in the district court.

> ceding sentence may be ameliorated or suspended by
> the court as provided in section 3563(a)(4).

(emphasis added). The sentencing guideline provision governing mandatory conditions of supervised release, U.S.S.G. § 5D1.3(a)(4), similarly requires that:

> the defendant shall refrain from any unlawful use of
> a controlled substance and submit to one drug test
> within 15 days of release on probation and at least
> two periodic drug tests thereafter (*as determined by
> the court*) for use of a controlled substance, but the
> condition stated in this paragraph may be amelio-
> rated or suspended by the court for any individual
> defendant if the defendant's presentence report or
> other reliable information indicates a low risk of
> future substance abuse by the defendant . . . .

*Id* (emphasis added). In addition, U.S.S.G. § 5D1.3(d)(4) recommends that the court, if it has reason to believe the offender is an abuser of drugs, add as a special condition of supervised release "a condition requiring the defendant to participate in a program approved by the United States Probation Office for substance abuse, which program may include testing to determine whether the defendant has reverted to the use of drugs or alcohol."

**[2]** Complementing the sentencing authority it has given the court, Congress has given probation officers broad statutory authority to supervise offenders and to enforce a sentencing court's terms and conditions of supervised release and probation. *See,* 18 U.S.C. § 3603 (providing inter alia that a probation officer shall instruct the probationer or person on supervised release of the conditions specified by the court, keep informed of the person's conduct and condition, aid the person in bringing about improvements in his conduct and condition, be responsible for the supervision of such persons, keep informed concerning the conduct, condition and compli-

ance with any condition of probation, and immediately report any violation to the court); *see also*, 18 U.S.C. § 3606 (authorizing a probation officer to arrest a probationer or person on supervised release, whom the probation officer has probable cause to believe has violated a condition of his probation or release).

**[3]** The division of labor between the district court and the probation office, regarding drug testing, drug treatment, and other conditions of supervised release, has been the subject of several decisions, by this court and several of our sister circuits. The law has, by and large, developed along the principle that, where the court makes the determination of *whether* a defendant must abide by a condition, and *how* (or, when the condition involves a specific act such as drug testing, *how many times*) a defendant will be subjected to the condition, it is permissible to delegate to the probation officer the details of where and when the condition will be satisfied.[2] The limita-

---

[2]Cases involving drug testing include *United States v. Bonanno*, 146 F.3d 502, 511 (7th Cir. 1998) (drug testing order which required the defendants to submit to urinalysis "at random . . within the discretion of the probation officer" was beyond the parameters of the supervised release statute and gave the probation officer too much discretion in the management of the drug testing order); *United States v. Melendez-Santana*, 353 F.3d 93, 103 (1st Cir. 2003) (while courts need not become involved in details such as scheduling tests, Congress assigned the courts the responsibility of stating the maximum number of tests to be performed or to set a range; they may not vest probation officers with the discretion to order an unlimited number of drug tests); and *United States v. Tulloch*, 380 F.3d 8, 10-11 (1st Cir. 2004) (giving probation officer discretion to order unlimited drug tests is an improper delegation; allowing the probation officer to determine the timing of tests is permissible administrative task).

Cases involving mental health treatment include *United States v. Kent*, 209 F.3d 1073, 1079 (8th Cir. 2000) (court's order that if counseling "becomes necessary" probation officer may determine whether defendant must participate, was inconsistent with Article III because punishment is a judicial function, and the guidelines state that the court may impose that condition); *United States v. Peterson*, 248 F.3d 79, 85 (2nd Cir. 2001) (special condition of supervised release requiring sexual offender counsel-

tion courts impose on permitting a probation officer to deter-

---

ing "only if directed to do so by his probation officer" would be an impermissible delegation of judicial authority; however if the district judge intended nothing more than to delegate to the probation officer the details of selection and scheduling of the program, such delegation was proper); *United States v. Allen*, 312 F.3d 512, 516 (1st Cir. 2002) (sentence requiring that the defendant "shall participate in a program of mental health treatment, *as directed by the probation officer*, until such time as the defendant is released from the program *by the probation officer*" was not an unlawful delegation; sentencing order inclusion of the words "shall participate" imposed mandatory counseling, while merely delegating the administrative details); *United States v. Zinn*, 321 F.3d 1084, 1092 (11th Cir. 2003) (no plain error in the district court's delegation of authority to the probation officer for overseeing defendant's mental health treatment, including administering polygraph tests administered in aid of treatment since probation officers play a vital role in effectuating the district court's sentence; order stated defendant "shall participate" as directed); *United States v. Taylor*, 338 F.3d 1280, 1284 (11th Cir. 2003) (order to participate in a mental health program "approved by the probation officer" was not so vague that it improperly delegated judicial responsibility to the probation office; Guidelines expressly permit the district court to require a mental health program *approved by the United States Probation Office*, probation officers play a vital role in effectuating the sentences imposed by district courts, they act under the discretion of the appointing court, are an arm of the court, and liaise between the court and the defendant; statutory mandate to "perform any other duty that the court may designate" is to (a) be interpreted broadly, although (b) it is limited by Article III which prohibits delegation of judicial functions); *United States v. York*, 357 F.3d 14, 21 (1st Cir. 2004) (distinguishing *Melendez-Santana* where the district court had ordered that defendant "shall be required" to submit to periodic polygraph testing as a means to ensure compliance with a sex offender counseling program; probation officer may determine the "details" of frequency, duration, and allowable scope of questioning; courts are not prohibited from using non-judicial officers to support judicial functions, as long as the judicial officer retains and exercises ultimate responsibility); *United States v. Pruden*, 398 F.3d 241, 250 (3d Cir. 2005) (order giving probation officer authority to decide whether or not defendant would have to participate in mental health program was improper).

Cases involving restitution payments include *United States v. Johnson*, 48 F.3d 806, 808-09 (4th Cir. 1995) (sentence requiring defendant to pay restitution in such amounts and at such times as may be directed by the

mine questions such as the manner by which a defendant will pay his restitution, whether drug testing will occur, or to determine the ultimate number of drug tests, is based upon the "probation officer's status as a nonjudicial officer." *United States v. Kent*, 209 F.3d 1073, 1078 (8th Cir. 2000). "The most important limitation is that a probation officer may not decide the nature or extent of the punishment imposed upon a probationer," *United States v. Pruden*, 398 F.3d 241, 250 (3d Cir. 2005), since "[u]nder our constitutional system the right to . . . impose the punishment provided by law is judicial. . . ." *Ex parte United States*, 242 U.S. 27, 41-42 (1916). The limitation is therefore of constitutional dimension, deriving from Article III's grant to the courts of power over "cases and controversies." *Pruden*, 398 F.3d at 250 (citing *Melendez-Santana*, 353 F.3d at 101).

## V.

**[4]** The district court ordered that Stephens participate in a drug treatment program as a condition of his supervised release. Specifically, the sentencing order stated that he "shall comply" with the special condition that he "participate in a drug and alcohol abuse treatment and counseling program, including urinalysis testing, as directed by the Probation Officer," as well as a "program of mental health treatment as directed by the probation officer." In other words, the court

---

Bureau of Prisons and/or the probation officer and also authorizing the probation officer to increase the monthly payment if he determined defendant was capable of paying more, was improper; statute setting forth the duties of probation officers was limited by Article III; that general principle does not, however, prohibit courts from using nonjudicial officers to support judicial functions, as long as a judicial officer retains and exercises ultimate responsibility); *United States v. Gunning*, 401 F.3d 1145 (9th Cir. 2005) (setting restitution schedule is non-delegable under Mandatory Victims Restitution Act of 1996, 18 U.S.C. § 3664(f)(1)(A)), distinguishing *Montano-Figueroa v. Crabtree*, 162 F.3d 548, 550 (9th Cir. 1998) (per curiam) (holding that scheduling fine payments could be delegated).

itself answered the question of *whether* Stevens would undergo treatment, and whether treatment program testing would be required. The sentencing order's inclusion of the words "shall comply" imposed mandatory treatment and treatment program urinalysis, while merely delegating the administrative details of arranging the program to the probation officer. No discretion on the subject was given to the probation officer, other than to perform the ministerial tasks of choosing the appropriate program and facilitating Stephens' attendance. Thus, there was no delegation of Article III judicial power regarding the primary decision of whether Stephens would undergo treatment and that the treatment program would include urinalysis.

## VI.

That leaves the subordinate, statutory issues of whether the district court erred in (1) failing to specify the number of in-treatment drug tests, as well as (2) the maximum number of non-treatment drug tests to which Stephens would be required to submit.

## A.

In construing a statute, the court's objective is to ascertain the intent of Congress in enacting it and give effect to the legislative will. *United States v. Gilbert*, 266 F.3d 1180, 1183 (9th Cir. 2001) (citing *Negonsott v. Samuels*, 507 U.S. 99, 104 (1993). Where legislative "will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive." *Id*. If the plain language of a statute renders its meaning reasonably clear, the court will not investigate further unless its "application leads to unreasonable or impracticable results." *United States v. Daas*, 198 F.3d 1167, 1174 (9th Cir. 1999).

## B.

**[5]** Congress's inclusion in § 3583(d), the supervised release provision, of the drug testing requirement and the par-

enthetical provision, "as determined by the court," as well as its provision that the drug testing condition may be "ameliorated or suspended by the court," is without question a plain expression of its intent that courts themselves determine not only whether the defendant will be tested during supervised release, but the maximum number of tests as well. By using the words "shall order," Congress has required that those on supervised release be subjected to "at least" three drug tests. The first must be administered within fifteen days of release. At least two additional tests are also mandated, but Congress left it to the district judge's discretion to require even more testing, or to specifically find that no testing was needed at all.

**[6]** We agree with the First Circuit's holdings in *Melendez-Santana* and *Tulloch*, that the statute, together with the guideline, clearly requires that the court, not the probation officer, set the maximum number of non-treatment-program drug tests to which a defendant may be subjected. Congress set the conditional minimum while assigning to the courts the responsibility of stating the maximum number of tests to be performed or to set a range for the permissible number of tests.

The district court's sentencing order, while incanting most of the words of the statute, failed to abide by its final requirement that the court itself determine the maximum number of drug tests. It ordered that Stephens submit to the fifteen day drug test as well as "at least two periodic drug tests thereafter, as directed by the probation officer." Under the statute, it was for the district court to determine the maximum number, not for the probation officer to direct. Having determined that number, the court could have left it to the probation officer to direct the scheduling and other details of the test. But probation officers may not be vested with unlimited discretion to order drug tests given the very real consequences that may follow therefrom. Where, as here, a probation officer can of his own accord order a test, he is subjecting the defendant to the possibility of further criminal punishment. While allowing

the probation officer to determine the timing of tests is a permissible administrative task, it is for the court to determine how many times a defendant may be placed in jeopardy of being tested.

**[7]** We find that, while the district court itself determined the *minimum* number of tests to which Stephens would be required to submit, the court erred when it failed to state the *maximum* number of non-treatment drug tests the probation officer could impose. This delegation of the court's statutory duty was impermissible.

## C.

**[8]** On the other hand, Congress has not required that the courts micro-manage drug treatment programs by setting a maximum number of in-treatment tests. Where the district court specifies that the defendant shall participate in a drug treatment program, it may properly delegate to the probation officer the responsibility for selecting the program. The drug treatment professionals then have the responsibility to design the course of treatment, including the frequency of in-treatment testing, to ensure that the treatment is effective. The requirement of § 3563(b)(9), incorporated by reference into § 3583(d), that the drug treatment be specified "*by the court*," does not require the district court itself specify the details of the treatment. As we stated in the context of psychological treatment for a sex offender, "the court cannot be expected to design the particularities of a treatment program. That the court allowed a therapist to do so does not mean the court delegated its authority to impose conditions of release." *United States v. Fellows*, 157 F.3d 1197 (9th Cir. 1998) (supervised release condition requiring that the defendant "follow all other lifestyle restrictions or treatment requirements imposed by defendant's therapist." was not improper delegation); *see also United States v. Rearden*, 349 F.3d 608 (9th Cir. 2003) (giving probation officer authority to select treatment program for sex offender was not improper; that is what probation officers

do; they are mandated to supervise offenders and to enforce a sentencing court's terms and conditions of supervised release and probation);[3] *but see United States v. Williams*, 356 F.3d 1045 (9th Cir. 2004) (limiting the application of *Rearden* where supervised release condition involves requirement that defendant take psychotropic drugs; district court must make explicit, specific finding under § 3583(d)(2)); *cf. United States v. Duff*, 831 F.2d 176, 178-79 (9th Cir. 1987) (holding that a probation officer in a pre-Guidelines case had the power to order a defendant to submit to drug testing even when the court had not explicitly imposed such a condition).[4]

[9] Similarly here, the court does not improperly shirk its responsibility to impose the conditions of release merely by allowing the drug treatment professionals to design the course of treatment, where the court has specifically required that the treatment include testing. Congress has opted to differentiate between testing done as a mandatory condition of supervised release and testing done in the course of special condition drug treatment. Only for the former case must the district

---

[3]While the government argues that *Rearden* could arguably support the notion that the probation officer may decide the extent of non-treatment drug testing, nothing in *Rearden*, can be read to imply that the probation officer is empowered to do anything more than *enforce* the sentencing court's decision on the extent of drug testing. As Congress has clearly provided in the statutes and Guidelines that it is the sentencing court's role to decide the number of tests, we construe *Rearden* to hold only that the probation officer has the ability to devise the details of testing, but only after the court has made the initial "whether" and "how many" determinations.

[4]The dissent claims our resolution ignores the binding precedent of *Duff*, that a probation officer has the authority to require drug testing even where never ordered by the district court. However, *Duff* is easily distinguished. The case considered the question of whether the probation officer had the power under 18 U.S.C. § 3655 (1982 & Supp. III 1985), *repealed by* Pub. L. No. 98-473 (now codified at 18 U.S.C. § 3603), to order Duff to submit to non-treatment drug testing. Here, we construe an entirely different statute, § 3583(d), which specifically sets forth the obligation of the district judge to determine the number of drug tests.

court specify the maximum number of tests. Only in the former is the testing penological in nature. The frequency of treatment program testing is a question for the professionals administering the program to properly determine in the performance of their ordinary treatment functions, which are entirely non-penological. Stephens' sentence itself required that he participate in a drug treatment program and that as a part of the program he be tested to ensure his compliance with it. Having determined that the drug treatment program would include testing, it was not improper, under *Fellows*, for the court to permit the probation officer to select the program and to allow the drug treatment professionals to determine the "particularities of [the] treatment."

**[10]** We vacate the drug testing provision and remand this case to the district court so that it may determine the maximum number of drug tests to which the defendant must submit while on supervised release.[5] The defendant shall not be required to take any drug tests beyond the three required by the statute unless the district court has made such a determination.

SENTENCE VACATED IN PART; REMANDED.

---

[5]The dissent also criticizes our holding on the ground that it invites sentencing courts to set the maximum number of drug tests "sky-high," in effect delegating to the probation officer exactly the same authority as here. We doubt that district court judges would make unprincipled determinations. It may well be that, given an offender with serious predilections toward drug use, the district court will set the maximum number sufficiently high to give the probation officer flexibility in supervising the offender. The obverse is equally likely. A district judge may wish to exercise the discretion Congress has granted in § 3583(d) and specifically negate testing during supervised release of an offender with no history of drug use. In either event, the key under the statute is that the sentencing court, not the probation officer, make the penological decision of placing the offender in jeopardy of submitting to the tests.

CLIFTON, Circuit Judge, concurring in part and dissenting in part:

The majority has concluded that a convicted defendant may be required to submit to drug testing within a drug treatment program imposed by the court as a condition of supervised release, in which case the number of drug tests need not be set by the court itself. I agree with that holding and concur with that part of the decision.

The majority has also concluded, however, that a probation officer is not permitted to determine the maximum number of drug tests that may be required of the convicted defendant if the testing is conducted outside of a specified treatment program, even where the sentencing court has explicitly ordered testing and specified a minimum number of tests. The majority holds that the maximum number of nontreatment drug tests must be specified by the court itself. I disagree, for reasons of precedent and policy.

First, that holding is inconsistent with binding precedent, in the form of our decision in *United States v. Duff*, 831 F.2d 176 (9th Cir. 1987). We held there that a probation officer had the authority to require a convicted defendant to submit to drug testing even when the district court had not ordered drug tests as a condition of supervised release. We observed that the district court had ordered the defendant to obey all laws and that probation officers were required by statute to "use all suitable methods, not inconsistent with the conditions imposed by the court, . . . to bring about improvements in [a probationer's] conduct and condition" and to "keep informed concerning the conduct and condition of each probationer under [their] supervision." *Id.* at 178 (quoting 18 U.S.C. § 3655, part of the Federal Probation Act, 18 U.S.C. §§ 3651-56, then in effect but repealed effective November 1, 1987) (quotation marks omitted and alteration in original). We reasoned that the probation officer's use of urinalysis to determine whether the defendant was using illegal drugs was

consistent with the condition that the defendant obey the law, made it more probable that the defendant would successfully complete the probationary period, and allowed the probation officer to stay informed as to the defendant's conduct. Accordingly, we held that the probation statute and the general order regarding compliance with the law gave the probation officer the authority to require drug testing without further direction from the court. *Id.* at 178-79.

The same considerations that supported the holding in *Duff* are present in this case. Here, the district court ordered, as conditions of supervised release, that the convicted defendant "not commit another federal, state or local crime," "refrain from any unlawful use of a controlled substance," "submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter," and "participate in a program of drug or alcohol abuse treatment including urinalysis testing and counseling as directed by the probation officer." To enforce compliance with those conditions, his probation officer was empowered by statute to

> (3) *use all suitable methods*, not inconsistent with the conditions specified by the court, to aid a probationer or a person on supervised release who is under his supervision, and to bring about improvements in his conduct and condition;
>
> (4) *be responsible for the supervision of any probationer* or a person on supervised release who is known to be within the judicial district;
>
> * * *
>
> (7) *keep informed* concerning the conduct, condition, and compliance with *any condition* of probation . . . ;
>
> * * *

> (10) perform any other duty that the court may designate.

18 U.S.C. § 3603 (emphasis added).

Although the structure of the supervised release statute has changed since *Duff*, the broad language of the current statute outlining the duties of probation officers conveys the same substantive authority that existed under the predecessor statute. *Compare* 18 U.S.C. § 3603 *with* the previous version, 18 U.S.C. § 3655, as discussed in *Duff*, 831 F.2d at 178; *see also United States v. Smith*, 45 F. Supp. 2d 914, 919 (D. Ala. 1999) (relying on 18 U.S.C. § 3603 to hold that probation officers have the power to determine the number and frequency of drug tests). If a probation officer can require drug tests when the sentencing court did not impose testing as a condition of supervised release, as we held in *Duff*, then surely the probation officer can require additional tests after the court has explicitly imposed submission to drug testing as a requirement of supervised release. Thus, when Stephens was ordered as a condition of probation to refrain from all unlawful use of a controlled substance and to submit to two or more drug tests (in addition to the one test ordered within the first 15 days after release from imprisonment), the probation officer was authorized by statute, as we held in *Duff*, to use any suitable means to ensure that the defendant complied with that condition. Requiring additional drug tests and determining how many more tests, beyond the minimum, was properly within the power of the probation officer.

The majority opinion cites *Duff* with approval, *ante* at 12093, and then dismisses *Duff*, *ante* at 12093 n.4, with the observation that "[h]ere, we construe an entirely different statute, [18 U.S.C.] § 3583(d), which specifically sets forth the obligation of the district judge to determine the number of drug tests." The fact of a different statute is relevant, however, only if *Duff* has been overruled by § 3583. In other words, *Duff* is controlling unless the authority that we held

probation officers possess under § 3655—authority that is preserved under § 3603—was stripped from probation officers by the enactment of § 3583. The majority does not even attempt to make such an argument. Nor could it do so easily, as *Duff* was cited with approval just two years ago in *United States v. Rearden*, 349 F.3d 608, 619 (9th Cir. 2003).

Nevertheless, I infer that the majority has concluded that *Duff* was effectively overruled by Congress when it enacted the current version of § 3583(d). That statute requires the district court to order as an explicit condition of supervised release, among other things, that a defendant submit to a drug test within 15 days of release "and at least 2 periodic drug tests thereafter (as determined by the court) for use of a controlled substance," a condition which "may be ameliorated or suspended by the court." That language was added to the statute in 1994, as part of the Violent Crime Control and Law Enforcement Act of 1994, Pub.L. 103-322, § 20414(c), to strengthen the effort to combat drug use by persons on supervised release. The majority opinion refers to our duty to give effect to the legislative will. *Ante* at 12090. If that is the majority's goal, it is highly improbable, to say the least, that Congress intended that statute to *curtail* the authority of a probation officer to require appropriate drug testing based on the circumstances of the individual defendant on supervised release, which is the authority we identified in *Duff*. The parenthetical "(as determined by the court)" simply required the court to establish a minimum number of drug tests. It did not intend to take authority away from a probation officer or restrict the ability of the court to delegate supervisory authority to the probation officer, who is an employee of the judicial branch and is appointed by the court, *see* 18 U.S.C. § 3602(a). *Duff* has not been superseded, and it should control our decision here.

Second, the rule that emerges from the decision in this case makes little sense. At the time of sentencing, the district court is not in a position to determine how many tests may be

required for proper supervision of an individual defendant. Nor should the district court be expected to monitor each defendant's situation and determine the supervision needs during the period of the convicted defendant's supervised release. That is why the court employs probation officers. Today's decision simply invites sentencing courts to set a high maximum number of tests—the largest number of tests that might be required or sought by a probation officer—thus effectively delegating to the probation officer exactly the same authority. The majority opinion suggests that this would be "unprincipled," *ante* at 12094 n.5, but I think a more apt description would be "prudent." Why should the district judge expect to know more about the defendant's needs at the time of sentencing than the probation office will during the course of supervised release, which could begin many years later? In the comparably rare situation that a district court determines a defendant poses no danger of future drug use, the court is expressly authorized to "ameliorate[ ] or suspend[ ]" the drug testing provision "as provided in . . . [18 U.S.C. § 3563(a)(4)]." That has nothing to do with the propriety or probability that district courts will generally order a high maximum number of nontreatment drug tests to satisfy the unnecessary requirement imposed by the majority opinion.

Moreover, this decision creates a false dichotomy between drug testing done while the convicted defendant on supervised release is within a treatment program and drug testing done outside or after the completion of such a program. The testing is exactly the same. The purpose of the testing is exactly the same, and one is no more penological than the other. Simply because a defendant has completed a treatment program does not mean that there is no longer reason to be concerned about drug use. Most controlled substances are addictive, and fighting addiction is a long-term, often life-time, battle. If the risk of being caught by a drug test helps keep a person on supervised release off drugs, we do an enormous disservice by restricting the ability of a probation officer to order such a test. We do an even greater disservice when we limit the pro-

bation officer's ability to order drug testing when the officer has actual reason to suspect that a given defendant has lapsed back into drug use. This new limitation on a probation officer's ability to require drug testing is surely not what Congress intended when it required courts to include drug testing as an explicit condition of supervised release.

I respectfully dissent.