**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

ANTONIO D. STEPHENS,
            *Defendant-Appellant.*

No. 04-50170

D.C. No.
CR-00-03718
Southern District
of California,
San Diego

ORDER

Filed March 8, 2006

Before: Stephen Reinhardt, Andrew J. Kleinfeld and
Richard R. Clifton, Circuit Judges.

Order;
Dissent by Judge Tallman

## ORDER

The majority of the panel has voted to deny the petition for rehearing and rehearing en banc. Judge Clifton would grant the petition.

The full court was advised of the petition for rehearing en banc. A judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the non-recused active judges in favor of en banc reconsideration. FED. R. APP. P. 35.

The petition for rehearing and rehearing en banc is denied.

TALLMAN, Circuit Judge, with whom WARDLAW, RAWLINSON, CLIFTON, BYBEE, CALLAHAN, and BEA, Circuit Judges, join, dissenting from denial of rehearing en banc:

Today, by ignoring the plain meaning of 18 U.S.C. § 3583(d), the court rewrites the language of an unambiguous statute, contravenes the United States Parole Commission's authoritative Rules and Procedures Manual, and disregards controlling Ninth Circuit case law by requiring district judges "to set the maximum number of *non-treatment* drug tests to which [a defendant] would be subjected during the course of his supervised release." *United States v. Stephens*, 424 F.3d 876, 878 (9th Cir. 2005) (emphasis in original). The ruling makes no sense under a supervisory scheme that properly delegates to the court's probation officers responsibility for determining how best to enforce the terms and conditions of supervised release set months or years earlier by the sentencing judge. The drug testing condition is typically imposed and ordered by judges, as part of the original sentence, to become effective *after* release from incarceration based upon the offender's criminal history, the nature of the crime of conviction, and the Pre-Sentence Report. Congress no doubt had these policy considerations in mind when it passed § 3583(d), and we should refrain from frustrating them.

The panel's interpretation of § 3583(d) is contrary to the plain meaning of its language. Section 3583(d) reads, in relevant part:

> The court shall also order, as an explicit condition of supervised release, that the defendant refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of release on supervised release and *at least* 2 periodic drug tests thereafter (as determined by the court) for use of a controlled substance. The condition stated in the pre-

> ceding sentence may be ameliorated or suspended by the court as provided in section 3563(a)(4).

18 U.S.C. § 3583(d) (emphasis added). The opinion reasons that the parenthetical provision "as determined by the court" requires the district court "to set the maximum number of *non-treatment* drug tests to which [a defendant] would be subjected during the course of his supervised release." *Stephens*, 424 F.3d at 878 (emphasis in original). But the parenthetical modifies the adverb "at least." Indeed, although the parenthetical's preceding clause establishes the floor, it says nothing about the height of the ceiling.

The statute neither mentions nor even contemplates the existence of a maximum number of non-treatment drug tests. The statute, therefore, cannot be read to require district judges to perform a task that is not mentioned in the statute. Indeed, there is no point in having probation officers supervise the return to society of convicted felons if the officers may not exercise the necessary discretion to require additional drug testing when felons under their supervision exhibit the telltale signs of renewed drug use.

But even under the panel opinion's interpretation of the statute, there should be no problem with delegating to probation officers the authority to submit a supervised releasee to a drug test. "In fact, since '[t]he United States Probation Office is established pursuant to the direction of Congress as an arm of the United States District Court[,] . . . it is reasonable to view the United States Probation Office itself as a legally constituted arm of the judicial branch.' " *United States v. Reyes*, 283 F.3d 446, 455 (2d Cir. 2002) (alteration in original) *(quoting United States v. Inserra*, 34 F.3d 83, 88 (2d Cir. 1994)).

The panel opinion engages in a precarious exercise to divine congressional intent. But rather than examining legislative history or consulting the United States Parole Commis-

sion's Rules and Procedures Manual for the responsible agency's reasonable interpretation of its duties under the statute, the opinion merely attempts to construct a tautological argument, declaring:

> Congress's inclusion in § 3583(d), the supervised release provision, of the drug testing requirement and the parenthetical provision, "as determined by the court," as well as its provision that the drug testing condition may be "ameliorated or suspended by the court," is without question a plain expression of its intent that courts themselves determine not only whether the defendant will be tested during supervised release, but the maximum number of tests as well.

*Stephens*, 424 F.3d at 882. But the inference is too weak even to be called a tautology. I do not understand how one can infer from the language of the statute "a plain expression of [congressional] intent" about a provision that is not even contemplated by that statute.

Equally unsettling is the opinion's contravention of the policies of the United States Parole Commission, the agency within the United States Department of Justice created by congressional act to set policy for supervising convicted persons after their release from custody. In its authoritative Rules and Procedures Manual, the Parole Commission commands in no uncertain terms that as a condition of release "the parolee shall submit to a drug test *whenever ordered* by his Probation Officer." U.S. Parole Comm'n Rules & Procs. Manual § 2.40(a)(14) (U.S. Dep't. of Justice 2001) (emphasis added), *available at* http://permanent.access.gpo.gov/lps9890/lps9890/www.usdoj.gov/uspc/ProcedureManual/part1.htm (last visited Feb. 21, 2006). The Rules and Procedures Manual further states that this condition is "attached to every grant of parole and [is] deemed necessary to provide adequate supervision and to protect the public welfare. [This condition is]

printed on the certificate issued to each parolee and mandatory releasee . . . ." *Id.* § 2.40(a).

The Rules and Procedures Manual goes on to define "drug test" so broadly that it "include[s] an 'alcohol test.' Therefore, a United States probation officer may order a parolee to submit to a breathalyzer or other alcohol test under this section." *Id.* § 2.40(a)(14). The United States Parole Commission has been entrusted with the responsibility of overseeing federal policy on the matter, 18 U.S.C. § 4203(a)(1), and its policies are probative of congressional intent. Since congressional intent is at issue, the responsible agency's reasonable interpretation of its duties under the statute merits *Skidmore* deference. *Skidmore v. Swift & Co.*, 323 U.S. 134, 139-40 (1944). Indeed, if Congress had intended § 3583(d) to require district judges to set a maximum number of non-treatment drug tests, or to assume the responsibility of monitoring persons released from incarceration but still under supervision, then it would not have been silent on the delegation issue when an agency it created has been so clear.

The panel opinion also frustrates congressional policy concerns and the practical considerations underlying § 3583(d). Strong policy considerations militate against the panel's interpretation of the statute. As Judge Clifton observes in his dissent, "[a]t the time of sentencing, the district court is not in a position to determine how many tests may be required for proper supervision of an individual defendant." *Stephens*, 424 F.3d at 887 (Clifton, J., dissenting). Indeed, "[w]hy should the district judge expect to know more about the defendant's needs at the time of sentencing than the probation office[r] will during the course of supervised release, which could begin many years later?" *Id.*

The probation officer is in the best position to determine the maximum number of non-treatment drug tests needed for effective compliance with the court-imposed drug testing condition. He has the expertise and experience to decide when a

drug test is necessary to ensure compliance with parole condi-
tions and to keep the community safe. He is in regular contact
with the parolee and has been trained to identify symptoms of
drug use. In its Petition for Rehearing and Rehearing En
Banc, the government keenly observes:

> It makes perfect sense to place the specifics of test-
> ing in the hands of those best able to evaluate a
> defendant's needs and situation. Probation officers
> can monitor a wide variety of drug-use indicators,
> such as the defendant's ability to hold a job, his or
> her disruptive behavior, thefts from the home, choice
> of associates, and drug-related arrests of friends and
> family. Probation officers may observe abnormal
> conditions such as hyperactivity, slurred speech, rhi-
> norrhea (runny nose from inhaling substances), or
> reddened or constricted or dilated pupils. They may
> also observe symptoms of abuse such as injection
> marks, lesions, abscesses, discoloration of the upper
> arms (from tourniquets), aggravated pustular acne,
> excessive sensitivity to light, or enlarged or puffy
> hands and loss of motor control at the wrist (from
> injections).

PFR/PFREB at 11. The government also correctly observes:

> Because of the court's inability to prognosticate,
> most prudent district judges will set a maximum as
> high as they imagine a probation officer might
> require. Thus, the panel's holding is unlikely to limit
> probation officer discretion, but will invite second-
> ary litigation over whether the maximum is set too
> high. In addition, the standard Judgment and Com-
> mitment Form AO 245B—which has been used in
> the Ninth Circuit for years—does not require the
> judge to set the maximum number of drug tests.
> Previously-sentenced defendants will attempt to rely
> on this opinion to challenge any drug testing by pro-

bation officers. The likely increase in secondary litigation makes this case important for the administration of justice, and provides an additional reason for en banc review.

*Id.* at 1-2.

Finally, if the defendant objects to the probation officer's imposition of the drug-testing condition, he has a statutory remedy under 18 U.S.C. § 3583(e)(2), which provides that the court "may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release . . . ." This is probably why Congress makes no mention of a maximum number of non-treatment drug tests in § 3583(d). It would have been wasteful for Congress to impose such a superfluous condition.

The panel opinion turns the words of an unambiguous statute on its head, undermining its very purpose. The statute cannot be read to require district judges to perform a task that is not even mentioned in the statute and which is best left to trained probation officers. Unfortunately, because of our refusal to rehear this case en banc, it is up to Congress to amend 18 U.S.C. § 3583(d) to make clear what should have been obvious to the panel. In the meantime, our already overworked district judges are saddled with unnecessary additional duties that Congress expected probation officers would discharge.

I respectfully dissent from the denial of rehearing this case en banc.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2006 Thomson/West.