**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

ARNOLD RAY TAYLOR,

*Defendant-Appellant*.

No. 22-10203

D.C. No.
2:05-cr-00473-
WBS-1

OPINION

Appeal from the United States District Court
for the Eastern District of California
William B. Shubb, District Judge, Presiding

Argued and Submitted May 10, 2023
San Francisco, California

Filed August 25, 2023

Before:  Sidney R. Thomas, Morgan Christen, and Daniel
A. Bress, Circuit Judges.

Opinion by Judge Christen

## SUMMARY[*]

### Criminal Law

The panel affirmed the special conditions of supervised release imposed by the district court in a case in which Arnold Ray Taylor argued that the district court (1) unconstitutionally delegated its judicial authority to Taylor's probation officer to determine the duration of the substance abuse treatment required in Special Condition 2, and (2) erred because it imposed an above-Guidelines sentence and failed to specifically explain its reasons for doing so.

The panel held that the district court, which ordered a specific time range for Taylor's inpatient substance treatment with a hard upper limit of one year, did not unconstitutionally delegate its judicial authority by ordering the probation officer to supervise Taylor's progress in inpatient treatment, and allowing the probation officer the discretion to reduce—but not increase—the duration of his inpatient treatment in consultation with Taylor's care provider.

The panel held that the district court's imposition of Special Condition 2 in addition to a high-end Guidelines sentence did not constitute an upward variance. The panel explained that the Sentencing Guidelines permit community confinement to be imposed for longer than six months when, as here, intended to achieve successful drug rehabilitation (U.S.S.G. § 5F1.1 cmt. nt. 2); and that inpatient treatment

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

does not fit within the Guidelines definition of home detention, which may only be imposed as a substitute for imprisonment (U.S.S.G. § 5F1.2).

## COUNSEL

Douglas J. Beevers (argued), Assistant Federal Public Defender; Heather E. Williams, Federal Defender; Federal Public Defender's Office, Sacramento, California; for Defendant-Appellant.

Alstyn Bennett (argued), Assistant United States Attorney; Camil A. Skipper, Assistant United States Attorney, Appellate Chief; Phillip A. Talbert, United States Attorney; Eastern District of California, United States Attorney's Office, Sacramento, California; for Plaintiff-Appellee.

# OPINION

CHRISTEN, Circuit Judge:

Arnold Ray Taylor challenges the sentence he received after violating several conditions of his supervised release. Taylor first argues that the district court unlawfully delegated its judicial authority to his probation officer to determine the duration of his inpatient substance abuse treatment. His second argument is that the court erred because one year of inpatient treatment, plus the prison time he was sentenced to serve, exceeds the maximum recommended sentence for his offense, and the district court failed to explain what Taylor considers an upward variance. Finding no error, we affirm the special conditions of supervised release imposed by the district court.

## I

Taylor was convicted of drug- and firearm-related offenses in 2006 and sentenced to 117 months in prison with a 60-month term of supervised release. He was released from prison in 2014, but the district court revoked his supervised release in 2018 because Taylor violated the conditions of his release by possessing a firearm and failing to notify his probation officer of a contact with law enforcement. The district court sentenced Taylor to 27 months in prison followed by another term of supervised release, this one for 33 months. This second term of supervised release commenced on April 16, 2020. The conditions of release were modified several times to address Taylor's "stressors at home" and continued use of methamphetamine.

In April 2022, Taylor's probation officer filed a petition alleging that Taylor had again violated the conditions of his supervised release by failing to complete a residential reentry program, acquiring a new law violation for misdemeanor battery against his wife and daughter, and failing to provide notice of his arrest. Taylor admitted the new law violation and the failure to notify.

The Government filed a memorandum joining the probation officer's recommendation that the district court revoke Taylor's term of supervised release and sentence him to 14 months in custody followed by 24 months of supervised release. The Government also endorsed the probation officer's recommended special conditions for this third term of supervised release, including the requirement that Taylor participate in an inpatient substance abuse treatment program for up to 365 days under the supervision of his probation officer (Special Condition 2) and reside in a residential reentry center for up to 180 days (Special Condition 6). The probation officer's recommendation stated that the U.S. Sentencing Guidelines range for Taylor's conduct—a Grade C violation—was 8 to 14 months. The Government argued that a high-end Guidelines sentence was appropriate because "Taylor ha[d] failed to meaningfully participate in several opportunities for drug treatment and instead ha[d] engaged in an escalating pattern of behavior, resulting in his arrest."

Taylor objected to the probation officer's recommended sentence on two grounds. He first argued that the imposition of Special Condition 2 would constitute an unlawful delegation of judicial authority. Separately, he argued that a 14-month sentence of imprisonment, coupled with Special Conditions 2 and 6—which respectively imposed up to one year of inpatient treatment and up to 180 days in a residential

reentry center—would constitute an unjustified upward variance from the Guidelines range.  Taylor's second argument was premised on his contention that, pursuant to the Guidelines, both of the proposed special conditions restrict liberty so significantly that they are akin to imprisonment.[1]

At Taylor's revocation hearing, the district court found that Taylor had violated the conditions of his supervised release.  The court revoked Taylor's supervised release and imposed a sentence of 14 months to serve in prison, along with an additional 24-month term of supervised release.  The district court indicated that a high-end Guidelines sentence and Special Condition 2 were appropriate because Taylor

---

[1] The parties use the terms "upward departure" and "upward variance" interchangeably.  We explained the difference between a departure and a variance in *United States v. Cruz-Perez*:

> A "departure" is typically a change from the final sentencing range computed by examining the provisions of the Guidelines themselves.  It is frequently triggered by a prosecution request to reward cooperation, or by other factors that take the case "outside the heartland" contemplated by the Sentencing Commission when it drafted the Guidelines for a typical offense.  A "variance," by contrast, occurs when a judge imposes a sentence above or below the otherwise properly calculated final sentencing range based on application of the other statutory factors in 18 U.S.C. § 3553(a).

567 F.3d 1142, 1146 (9th Cir. 2009) (citations omitted).  Applying these definitions, Taylor's argument is that the district court applied an upward *variance*, not an upward departure, because he does not allege that the district court relied on any of the Guidelines' provisions to change the Guidelines range.  *See* U.S. Sent'g Guidelines Manual (USSG) § 5K2.0 (U.S. Sent'g Comm'n 2021).

had committed a serious crime, he had relapsed several times, and he had repeatedly violated the conditions of his supervised release, in part due to drug and alcohol abuse.

At the revocation hearing, Taylor's counsel continued to argue that the imposition of Special Conditions 2 and 6 constituted an unwarranted upward variance from the Guidelines range because Special Conditions 2 and 6 were comparable to imprisonment. Ultimately, the court declined to impose Special Condition 6 (the residential reentry program), but it rejected the premise that inpatient treatment and residential reentry programs are as restrictive of liberty as prison, and it adopted Special Condition 2 as articulated in the presentence report. That condition required:

> You must participate in an inpatient substance abuse/alcohol abuse treatment program and follow the rules and regulations of that program, for a period of up to 365 days, and up to 10 additional days for substance abuse detoxification services if deemed necessary. The probation officer, in consultation with the treatment provider, will supervise your participation in the program.

When making this ruling, the district court stated that it had "considered all the statutory provisions, including all of the sentencing factors in section 3583(e) as well as the policy statements issued by the sentencing commission." Taylor timely appealed.

## II

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo the district court's construction of the U.S.

Sentencing Guidelines, *United States v. Harris*, 999 F.3d 1233, 1235 (9th Cir. 2021), as well as claims that conditions of supervised release violate the Constitution, *United States v. Gibson*, 998 F.3d 415, 418 (9th Cir. 2021).

We review sentencing decisions for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 46 (2007).  The district court abuses its discretion if it commits procedural error by "fail[ing] adequately to explain the sentence selected, including any deviation from the Guidelines range." *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008); *see also Gall*, 552 U.S. at 51.  To impose a non-Guidelines sentence, district courts "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50; *see also Carty*, 520 F.3d at 991–92.  However, if a district court does not adequately state its reasons for varying from the Guidelines and no objection is raised, we review the sentence for plain error.  *United States v. Miqbel*, 444 F.3d 1173, 1176 (9th Cir. 2006); *see also United States v. Halamek*, 5 F.4th 1081, 1087 (9th Cir. 2021).

## III

### A

Taylor argues that the district court delegated the authority to decide the length of his inpatient treatment in violation of Article III of the U.S. Constitution.  Because Taylor challenged Special Condition 2 as an unlawful delegation before the district court, we review de novo.  *See Gibson*, 998 F.3d at 418; *cf. United States v. Vieke*, 348 F.3d 811, 813 (9th Cir. 2003).

Drawing most heavily on our decisions in *United States v. Esparza*, 552 F.3d 1088 (9th Cir. 2009) (per curiam), and

*United States v. Nishida*, 53 F.4th 1144 (9th Cir. 2022), Taylor contends that the district court impermissibly delegated its judicial authority to his probation officer because the court tasked the probation officer with supervising Taylor's progress in inpatient substance abuse treatment for a period of up to one year.  In Taylor's view, Special Condition 2 delegated to the probation officer the unfettered authority to decide "whether to choose a program of one day or up to one year."  We read our case law, and the condition the court actually imposed, differently.

In *United States v. Stephens*, we considered whether a district court may lawfully allow a probation officer to "set the maximum number of non-treatment-program drug tests" for a defendant on supervised release.  424 F.3d 876, 882 (9th Cir. 2005).  Concerns regarding the separation of powers dictated our conclusion that "a probation officer may not decide the nature or extent of the punishment imposed upon a probationer" because the imposition of punishment is an exercise of judicial authority.  *Id.* at 881 (quoting *United States v. Pruden*, 398 F.3d 241, 250 (3d Cir. 2005)); *see* U.S. Const. art. III.  *Stephens* also concluded that it is permissible to delegate ministerial tasks to the probation officer such as deciding "the details of *where* and *when* [a] condition will be satisfied."  *Id*. at 880–81 (emphases added).  In *United States v. Esparza*, we elaborated on the rule from *Stephens* and held that a district court may not impose a condition of supervised release that allows a probation officer to choose between inpatient and outpatient treatment because such a decision implicates the nature of punishment.  552 F.3d at 1091; *see also Nishida*, 53 F.4th at 1151.

The district court did not run afoul of *Esparza* when it imposed Special Condition 2 in Taylor's case because the court unambiguously directed that the nature of Taylor's

punishment would include inpatient substance abuse treatment. The question presented by Taylor's case is whether the district court violated the rule from *Stephens* by delegating to Taylor's probation officer the discretion to decide the "extent" of Taylor's inpatient treatment. *See* 424 F.3d at 881.

We addressed a somewhat similar issue in *United States v. Nishida*, 53 F.4th 1144. There, the district court did not specify any duration for a special condition requiring participation in a substance abuse treatment program, but the defendant did not object in the trial court. *Id.* at 1148, 1150 n.2. On appeal, Nishida argued that the condition improperly "allow[ed] the probation officer to impose an indefinite term" of substance abuse treatment. *Id.* at 1151. We reviewed for plain error only and rejected Nishida's argument that the condition allowed the probation officer to impose an indefinite treatment term. *Id.* We reasoned that "the probation officer's authority [wa]s necessarily cabined in by the defined duration of supervision." *Id.* *Nishida* is relevant to the question presented by Taylor's appeal, but it provides limited guidance because our review in *Nishida* was for plain error, and we expressly resolved only Nishida's specific argument on appeal: that the district court had authorized an *indefinite* term of treatment. *See id.*

Here, we conclude that the district court did not err because it ordered a specific time range for Taylor's inpatient substance abuse treatment with a hard upper limit of one year. The probation officer was granted the authority to allow less than one year of inpatient treatment, but contrary to Taylor's suggestion, Special Condition 2 did not give the probation officer unbridled discretion. The district court expressly required that the probation officer act only "in consultation with [Taylor's] treatment provider," and the

period of inpatient treatment was to be no more than one year.  We conclude the district court did not unlawfully delegate its judicial authority or give the probation officer unbridled discretion by tasking the probation officer with supervising Taylor's treatment progress and by authorizing the probation officer (in conjunction with Taylor's treatment provider) to allow less than one full year of inpatient treatment.  *See United States v. Ortega*, 19 F.4th 831, 833–34 (5th Cir. 2021) (upholding delegation of authority to probation officer to decide how long defendant would reside in an inpatient reentry center within range of four to twelve months).

In addition to finding that the court sufficiently specified the duration of Taylor's treatment, several practical considerations support our conclusion.  First, we recognize that district court judges are often dependent upon the professional advice of treatment providers to determine when the rehabilitative objectives of treatment programs have been accomplished.  A district court cannot predict whether an individual will make progress in a treatment program, nor the rate of any individual's progress, at the time the court formulates conditions of supervised release.  If we were to rigidly require that trial courts specify the precise length of inpatient treatment without regard to the progress made once treatment is underway, courts might be incentivized to err on the side of selecting lengthier periods of treatment to maximize the odds of successful outcomes.  That would result in greater deprivation of liberty than necessary for some defendants, and would simultaneously reduce the availability of treatment resources for others in need of them.

If district courts were required to evaluate each defendant's treatment progress and decide whether early

release is warranted, courts would frequently need to schedule hearings or receive and review interim progress reports on a defendant-by-defendant basis. That prospect would surely consume an enormous amount of resources from treatment providers (to prepare reports or provide testimony), as well as from judges, court staff, and probation officers (to receive and review reports and testimony). This sort of resource-intensive approach is warranted in select circumstances,[2] but requiring intensive court monitoring for every defendant undergoing substance abuse treatment would place a heavy burden on an already-overworked system.

Having considered the record in this case and the consequences of the rule Taylor advocates, we reject his contention that the district court unconstitutionally delegated its judicial authority by ordering the probation officer to supervise Taylor's progress in inpatient treatment, and allowing the probation officer the discretion to reduce—but not increase—the duration of his inpatient treatment in consultation with Taylor's care provider.

## B

Taylor next argues that the district court erred because it imposed an above-Guidelines sentence and failed to specifically explain its reasons for doing so. This issue turns on whether the imposition of Special Condition 2 constituted an upward variance. If it did, the court was required to explain its variance. *See Carty*, 520 F.3d at 993; *see also Gall*, 552 U.S. at 51. The district court was unpersuaded by

---

[2] *See, e.g.*, *Drug Courts*, U.S. Dep't of Just. Off. of Just. Programs, https://www.ojp.gov/feature/drug-courts/overview [https://perma.cc/D3BC-4RH8] (last modified May 16, 2023).

Taylor's contention that inpatient treatment is akin to serving prison time, so the court did not accept the premise that the cumulative sentence it imposed (14 months of prison time plus inpatient treatment of up to one year) exceeded the maximum sentence recommended by the Guidelines. As a result, the district court did not provide an explanation for any variance.

The Government suggests that Taylor failed to preserve this argument and it urges us to review for plain error. We are not persuaded. Taylor clearly argued in memos filed before the revocation hearing, and in argument presented at the revocation hearing, that imposing Special Condition 2 would constitute an impermissible upward variance. We therefore review the district court's decision to impose Special Condition 2, in addition to a high-end prison term, for an abuse of discretion. *See Gall*, 552 U.S. at 46.

Taylor argues Special Condition 2 constituted an upward variance for two separate reasons. First, he observes that the application notes for Guideline 5F1.1 define "community confinement" to include "residence in a[n] . . . alcohol or drug rehabilitation center," and the application notes recommend that community confinement "not be imposed for a period in excess of six months." USSG § 5F1.1 cmt. nts. 1–2. Both Taylor and the Government recognize that Special Condition 2 is a form of community confinement, but that does not end the inquiry. The Guideline notes state that community confinement "*generally* should not be imposed for a period in excess of six months," but they also provide that "[a] longer period may be imposed to accomplish the objectives of a specific rehabilitative program, such as drug rehabilitation." *Id.* § 5F1.1 cmt. nt. 2 (emphasis added). Here, the record makes clear that the district court permissibly imposed Special Condition 2 for

longer than six months because Taylor had failed to successfully complete the previously imposed terms of supervised release due to his chronic and ongoing substance abuse. The condition was intended to achieve successful drug rehabilitation.

Next, Taylor asserts that in addition to constituting "community confinement," inpatient substance abuse treatment also qualifies as "home detention," which Guideline 5F1.2 states may only be imposed as a "substitute for imprisonment." *Id.* § 5F1.2. Again, we disagree. An application note to this Guideline defines "home detention" as entailing "a program of confinement and supervision that restricts the defendant to his *place of residence* continuously, except for authorized absences." *Id.* § 5F1.2 cmt. nt. 1 (emphasis added). Though the "place of residence . . . need not be the place where the defendant *previously* resided" and "may be any place of residence, so long as the owner of the residence . . . agrees to any conditions that may be imposed by the court," *id.* § 5F1.2 cmt. nt. 3 (emphasis added), this definition clearly contemplates a private residence, as opposed to an inpatient treatment center. Another application note makes this apparent. It specifies that home detention must be "enforced by appropriate means of surveillance by the probation office," such as electronic monitoring, and "the defendant is required to be in his place of residence at all times except for approved absences." *Id.* § 5F1.2 cmt. nt. 1.

In sum, we are persuaded that Special Condition 2 constitutes community confinement, but we reject Taylor's argument that Special Condition 2 qualifies as both community confinement *and* home detention. Inpatient treatment does not fit the definition of home detention, and accepting Taylor's interpretation would entirely blur the

distinction between two terms the Guidelines take care to define separately.[3]  While the Guidelines specify that home detention can be imposed "only as a substitute for imprisonment," the Guidelines include no such limit on the imposition of community confinement.  *Compare id.* § 5F1.1, *with id.* § 5F1.2; *see also id.* § 5D1.3(e)(1)–(2).

Because the Guidelines allowed Special Condition 2 to be imposed for longer than six months, and Special Condition 2 does not constitute home detention, the imposition of Special Condition 2 in addition to a high-end Guidelines sentence did not constitute an upward variance. The district court did not err by imposing Special Condition 2.

**AFFIRMED.**

---

[3] The application notes for Guideline 5F1.1 define "community confinement" as "residence in a community treatment center, halfway house, restitution center, mental health facility, alcohol or drug rehabilitation center, or other community facility."  USSG § 5F1.1 cmt. nt. 1.  Defendants subject to community confinement are allowed to leave the facility during non-residential hours for facility-approved programs.  *Id.*  The definition of community confinement makes no mention of surveillance or electronic monitoring.