**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

ELDON MILLER,

     Defendant - Appellant.

No. 19-2156

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:16-CR-01696-MV-1)**
_____

Devon M. Fooks, Assistant Federal Public Defender, Albuquerque, New Mexico, for Defendant - Appellant.

Frederick Mendenhall, Assistant United States Attorney (John C. Anderson, United States Attorney, with him on the brief), Albuquerque, New Mexico, for Plaintiff - Appellee.
_____

Before **PHILLIPS**, **BALDOCK**, and **McHUGH**, Circuit Judges.
_____

**McHUGH**, Circuit Judge.
_____

In this appeal, Defendant-Appellant Eldon Miller challenges his sentence. Mr. Miller pleaded guilty to one count of assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 113(a)(6) and 1153. The charges arose out of Mr. Miller's

operation of a motor vehicle while intoxicated, leading to an accident that caused serious and permanent injuries to his sole passenger. The district court imposed a within-Guidelines sentence of 36 months' imprisonment, to be followed by a three-year term of supervised release. Mr. Miller challenges his sentence on two grounds.

First, he argues that his sentence is substantively unreasonable. More specifically, Mr. Miller asserts that the district court unreasonably discounted, *inter alia*, the relationship between his disease of alcoholism and his criminal record, the detrimental effect that a lengthy prison term would have on his rehabilitation, and various mitigating facts related to his background.

Second, Mr. Miller objects to the district court's imposition of a special condition of supervised release that authorizes his probation officer to determine the number of drug tests to which he must submit during his term of supervised release. Mr. Miller contends the district court's imposition of this condition constituted error for several reasons. He argues: (1) this delegation of authority violated 18 U.S.C. § 3583(d), which requires that the district court determine the maximum number of drug tests to which a defendant must submit, at least when the testing is not imposed as part of a treatment program; (2) this same delegation of authority was constitutional error, constituting an impermissible delegation of judicial authority in contravention of Article III; and (3) the district court erred in failing to make findings on the record supporting imposition of the challenged condition. Mr. Miller concedes he did not challenge this condition below and that our review must be for plain error,

2

but he contends that each of these errors satisfies the plain-error standard. He asks this court to remand for resentencing.

Exercising jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we affirm the district court's sentence. Mr. Miller falls far short of rebutting the presumption of substantive reasonableness that attends a within-Guidelines sentence. Regarding the special condition, none of the three asserted errors satisfies plain-error review. To begin, we reject Mr. Miller's argument that the district court's delegation to probation constitutes constitutional error, and we therefore hold that this claim fails under the first prong of plain-error review. But we agree with Mr. Miller that the district court committed (1) a statutory delegation error and (2) erred in failing to make supporting findings on the record. We also agree that these two errors were plain, under the second prong of plain-error review. However, we hold that Mr. Miller's appeal falters under the third prong of the plain-error analysis, with respect to these two errors, and we therefore decline to reach the fourth prong. Because Mr. Miller has failed to establish that any of the asserted errors constituted plain error, we affirm the district court's sentence in its entirety.

## I.   BACKGROUND

### A.  *Factual History*

The facts underlying this appeal are undisputed. On April 23, 2015, Mr. Miller was driving a Chevrolet pickup truck while intoxicated on a highway within the Navajo Reservation. He lost control of the vehicle and it rolled over, causing serious injuries to his sole passenger, Jane Doe. Prior to the accident, Mr. Miller had

3

consumed about a half-pint of vodka, and a blood test determined that his blood alcohol concentration ("BAC") was 0.29 at about the time of the accident.

As law enforcement officers arrived at the scene, they found Ms. Doe unconscious and outside of the vehicle. She was airlifted to an Albuquerque hospital where doctors diagnosed her with seventeen different injuries, including a traumatic brain injury, a lacerated liver, and fractures of the spine, hip socket, pelvis, ribs, elbow, and shin. Ms. Doe required a feeding tube, splenectomy, bilateral chest tubes, and a ventilator to breathe. She spent three weeks in intensive care and could not walk for weeks following her discharge from the hospital.

Ms. Doe also suffers long-term consequences from the accident. As of the time of sentencing in July 2019, which was several years after the accident occurred, she continued to suffer memory loss that was manifesting in potentially dangerous ways—for example, she would forget that she turned on the stove. She could no longer cook for herself, and her mother was taking care of Ms. Doe and one of Ms. Doe's teenage daughters. Ms. Doe also lost her job because she was no longer able to perform the duties required of her employment. As a result, Ms. Doe's mother postponed her retirement in order to provide for Ms. Doe and her daughter. Although before the accident Ms. Doe had been an athlete and had previously served in the Air Force, as of the time of sentencing she found it too painful to bend her knees. She also has difficulty speaking in full sentences and, as of Mr. Miller's sentencing, could read only at a fifth-grade level. Her physical and mental condition have led to uncontrollable outbursts, causing rifts between her and her family members.

4

## B.  *Procedural History*

### 1. Pre-Sentencing Proceedings

A grand jury in the United States District Court for the District of New Mexico returned a one-count indictment against Mr. Miller, charging him with assault resulting in serious bodily injury in violation of 18 U.S.C. §§ 113(a)(6) and 1153. Mr. Miller entered into a Rule 11(c)(1)(C) plea agreement with the government, in which the parties agreed that a 24-month sentence was appropriate. The parties came to this agreement, in part, based on evidentiary issues regarding the government's ability to prove that Mr. Miller was the vehicle's driver. The district court rejected the Rule 11(c)(1)(C) plea agreement, explaining that a 24-month sentence was inappropriate under the circumstances of this case. Mr. Miller then pleaded guilty without a plea agreement.

The United States Probation Office prepared a presentence investigation report. Mr. Miller's calculated offense level of 18, together with his criminal history category of III, yielded a Guidelines range of 33 to 41 months' imprisonment.

### 2. Sentencing Proceedings

The district court held sentencing proceedings on July 25, 2019, where it heard from the parties and spoke at length about the basis for its sentence. The district court began its remarks by stating that the "focus" in its sentencing "ha[s] to be on what services we can provide to assure the safety of the community," explaining that it placed "[m]uch emphasis" on this. ROA Vol. II, at 43–44. It acknowledged that Mr. Miller is "still suffering from" and "in the grips of [his] addiction," *id.* at 46, and it

5

explained that the court system would work with Mr. Miller during his supervision to provide him with resources to help him attain his "dreams," *id.* at 46–47. The district court explained, "we are going to put together a plan" to allow Mr. Miller to earn his bachelor's degree in electrical engineering and to finish raising his children, and the only thing standing in his way is his addiction. *Id.* at 48.

In considering Mr. Miller's history and characteristics, the district court noted that he had attained an associate's degree in electrical engineering, had learned how to be a welder from his father, and had been "very successful with this trade" for many years, including in the years after the instant offense. *Id.* at 53. It also noted that he had acquired a second job as an umpire shortly before sentencing. The court further considered that Mr. Miller has two children with whom he maintains contact and for whom he pays child support.

The court acknowledged that Mr. Miller was sober for ten years before the instant offense. It also noted that in 2018, Mr. Miller had participated in outpatient addiction treatment, including group and individual counseling, before being successfully discharged from the program. The court further considered that from the offense in 2015, until February of 2019, Mr. Miller had been compliant with the conditions of his release; however, on February 9, 2019, he consumed whiskey. Mr. Miller underwent a new substance abuse evaluation on March 11, 2019, in which he was diagnosed with severe alcohol abuse disorder. The district court noted that Mr. Miller had not returned any positive drug or alcohol tests since that relapse.

The district court stated that it considered Mr. Miller's background "extremely serious," finding that it "reflected a lack of seriousness towards his alcohol abuse and his responsibilities towards the community in addressing it." *Id.* at 44. In particular, the district court noted that the instant offense was Mr. Miller's eighth conviction involving driving while intoxicated ("DWI"), and his seven previous DWIs had apparently not prevented him from continuing to abuse alcohol and drive. When he was previously sentenced to complete a DWI first-offender program, he failed to complete it. The instant offense was also his third offense involving a BAC level above 0.25. Mr. Miller's last arrest was "for similar reckless conduct of having a [BAC level] of over .25," and the three-year sentence imposed on Mr. Miller for that offense "did not have a lasting impact on Mr. Miller's decision in the instant case to get in a vehicle after drinking a half-a-pint of vodka before noon." *Id.* at 58. Nor did his current offense—despite its grave consequences—prevent him from buying and consuming alcohol once again afterwards.

The district court "acknowledge[d] and appreciate[d] Mr. Miller's remorse," but stated that "his words are simply not enough," finding it "unacceptable that it took a significant event to instill the sense of remorse in [him]," despite his "extensive record for similarly reckless behaviors spanning two decades." *Id.* at 57. Moreover, regarding Mr. Miller's relapse, the district court stated that the explanation he provided for it "is of concern," as the explanation was that stress caused by his two jobs and by the upcoming court appearance prompted the relapse. *Id.* at 57.

7

The district court also emphasized the serious nature of Mr. Miller's offense—driving while highly intoxicated and causing serious, permanent injury to Ms. Doe—and the need to provide just punishment for his offense, promote respect for the law, and promote public safety. Regarding the consequences of Mr. Miller's crime, the district court detailed the "horrific" injuries suffered by Ms. Doe—including traumatic brain injury and a lacerated liver—and its lasting impacts on her and her family. *Id.* at 44; 50–51; *see also* 55–57. The district court "[r]ead[] all of her medical records . . . to understand her physical pain as well as her emotional pains." *Id.* at 44. It noted that Ms. Doe went from being an athlete who had been honorably discharged from the U.S. Air Force to now "barely be[ing] able to move." *Id.* at 45–46. And she went from having a job and caring for herself and her children, to losing her job and "forever los[ing] the ability to care for herself." *Id.* at 47. It further noted that Ms. Doe's injuries affected her children, who "los[t] the ability to hang out with their mom and be comfortable with their own mother," because she now suffers from uncontrollable outbursts and mood swings. *Id.*

### 3. Mr. Miller's Sentence

After detailing the bases for its sentence and stating that it had considered both the Guidelines and the § 3553(a) factors, the district court sentenced Mr. Miller to a within-Guidelines term of 36 months' imprisonment, to be followed by three years of supervised release. It also imposed a series of conditions of supervised release.

As relevant here, under 18 U.S.C. § 3583(d), district courts must impose a supervised release condition ordering that the defendant "refrain from any unlawful

8

use of a controlled substance and submit to a drug test within 15 days of release on supervised release and at least 2 periodic drug tests thereafter (as determined by the court) for use of a controlled substance." The district court imposed that condition on Mr. Miller.

The district court also imposed several special conditions of supervised release. One condition is that Mr. Miller is prohibited from using or possessing alcohol. A second condition orders Mr. Miller to "participate in an outpatient substance abuse treatment program and follow the rules and regulations of that program" under the supervision of the probation officer. ROA Vol. I, at 63. Under the Sentencing Guidelines, such a treatment program "may include testing." U.S.S.G. § 5D1.3(d)(4).

A third special condition of supervised release provides as follows:

> You must submit to substance abuse testing to determine if you have used a prohibited substance. Testing may include urine testing, the wearing of a sweat patch, a remote alcohol testing system, an alcohol monitoring technology program, and/or any form of prohibited substance screening or testing. You must not attempt to obstruct or tamper with the testing methods. You may be required to pay all, or a portion, of the costs of the testing.

ROA Vol. I, at 63.

Mr. Miller did not object to this condition, or to any other condition of his supervised release, before the district court. Mr. Miller challenges this third special condition—and, more specifically, its requirement that he be subjected to drug testing at the discretion of his probation officer—on appeal.

9

## II. DISCUSSION

### A. *Substantive Reasonableness of the Sentence*

We review the reasonableness of a sentence for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Chavez*, 723 F.3d 1226, 1233 (10th Cir. 2013). "[S]ubstantive reasonableness addresses whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Damato*, 672 F.3d 832, 838 (10th Cir. 2012) (quotation marks omitted). The § 3553(a) factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant . . . ;

(5) any pertinent policy statement . . . ;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

10

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In conducting our substantive reasonableness review, we "will reverse only if the sentence imposed was arbitrary, capricious, whimsical, or manifestly unreasonable." *United States v. Barnes*, 890 F.3d 910, 915 (10th Cir. 2018) (quotation marks omitted). We "will, of course, take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall*, 552 U.S. at 51. However, we do not reweigh the sentencing factors; rather, we ask whether the sentence fell within the range of "rationally available choices that the facts and law at issue can fairly support." *United States v. Martinez*, 610 F.3d 1216, 1227 (10th Cir. 2010) (internal quotation marks omitted). Such deference is accorded because "[t]he sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case." *Gall*, 552 U.S. at 51. We "presume a sentence is reasonable if it is within the properly calculated [G]uideline[s] range." *Chavez*, 723 F.3d at 1233. The defendant bears the burden of rebutting the presumption that a Guidelines sentence is reasonable. *Id.*

The district court sentenced Mr. Miller to a term of 36 months' imprisonment. This sentence was within the Guidelines range of 33 to 41 months' imprisonment. Therefore, it is Mr. Miller's burden to rebut the presumption that this sentence was reasonable.

11

Mr. Miller challenges the substantive reasonableness of his sentence on the ground that it was more severe than necessary to comply with the purposes of § 3553(a). Specifically, he argues that the district court "unreasonably discounted" certain facts related to his alcoholism and also "failed to adequately take into account" other facts that would support a shorter sentence. Aplt. Br. at 6–8. Regarding the former, he notes that the instant offense resulted from his disease of alcoholism, and he argues that the district court "unreasonably discounted the relation between [his] alcoholism and his criminal record; his struggles with alcoholism and the recent progress he has made in his efforts to overcome it; and the detrimental effect that a lengthy term of imprisonment would have on his rehabilitation." *Id.* at 7. He further asserts that the "sentencing goals of protection of the public and deterrence of future criminal conduct can best be realized by fostering [his] treatment and rehabilitation." *Id.* at 7–8.[1] The other facts Mr. Miller argues the district court inadequately accounted for were: (1) Mr. Miller's acceptance of responsibility; (2) his efforts to provide for his children; and (3) his extensive employment history. Mr. Miller's arguments are unpersuasive.

First, in arguing that the district court "unreasonably discounted" certain facts related to his alcoholism and that it "failed to adequately take into account" other

---

[1] In his reply brief, Mr. Miller similarly argues that his "three-year term of imprisonment will almost certainly be counterproductive and substantially set back his further progress on the path of rehabilitation." Aplt. Reply Br. at 1–2. He argues that the district court therefore "made an error of judgment by failing to adequately protect the public against future crimes through effective treatment of [his] alcohol addiction." *Id.* at 3.

12

facts relevant to his sentence, Mr. Miller essentially argues that the district court wrongly weighed the sentencing factors and asks this court to reweigh them. Although we consider the "totality of the circumstances" in conducting a substantive reasonableness review, *Gall*, 552 U.S. at 51, "[w]e may not examine the weight a district court assigns to various § 3553(a) factors, and its ultimate assessment of the balance between them, as a legal conclusion to be reviewed de novo," *see United States v. Smart*, 518 F.3d 800, 808 (10th Cir. 2008). Here, as indicated above, the district court considered the § 3553(a) factors at great length—including Mr. Miller's rehabilitation, the seriousness of his offense, the need to provide just punishment, the need for deterrence, and the need to protect the public from further crimes of Mr. Miller—when imposing his sentence. It balanced these factors when deciding to impose a sentence that fell within the Guidelines range. The district court did not abuse its discretion in so doing, and Mr. Miller fails to rebut the presumption of reasonableness afforded to his within-Guidelines sentence.

We also reject Mr. Miller's argument that the district gave short shrift to his alcoholism when fashioning his sentence because it is unsupported by the record. Far from discounting Mr. Miller's disease, or his progress in his efforts to overcome it, the transcript of the sentencing proceeding shows that the district court paid careful attention to these facts when crafting his sentence. *See, e.g.*, ROA Vol. II, at 46 (acknowledging that Mr. Miller is "still suffering from" and "in the grips of [his] addiction"); *id.* at 54 (noting that in 2018, Mr. Miller had participated in outpatient treatment, including group and individual counseling, and was successfully

13

discharged from the program); *id.* at 57 (acknowledging that Mr. Miller was sober for ten years before the instant offense); *id.* at 55 (noting that Mr. Miller was diagnosed with a severe alcohol abuse disorder). After considering these facts, it was well within the district court's discretion to determine that "[t]he sentencing goals of protection of the public and deterrence of future criminal conduct," Aplt. Br. at 7–8, were best realized by the sentence it imposed, rather than by a shorter sentence that Mr. Miller claims would be more effective in treating his addiction. Furthermore, the district court was required to not just consider Mr. Miller's treatment when determining his sentence but also to ensure that the sentence it imposed reflects the seriousness of his offense and provides just punishment for it. *See* 18 U.S.C. § 3553(a)(2)(A) ("The court, in determining the particular sentence to be imposed, shall consider [*inter alia*] . . . the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.").

The record similarly belies Mr. Miller's argument that the district court "failed to adequately take into account [his] acceptance of responsibility for his actions, his efforts to provide for his children, and his extensive employment history." Aplt. Br. at 8. The transcript of the sentencing proceeding confirms that the district court carefully considered these facts—and then weighed these mitigating facts against the other relevant facts that Mr. Miller does not highlight in his briefing, such as the harm Mr. Miller's crime caused to Ms. Doe and her family and his extensive history of similar misconduct. The district court explicitly acknowledged that Mr. Miller has

14

two children with whom he maintains contact and for whom he pays child support. Regarding his employment, the district court noted, *inter alia*, that Mr. Miller had attained an associate's degree in electrical engineering, had learned how to be a welder from his father, and had been "very successful with this trade." ROA Vol. II, at 53. The district court also "acknowledge[d] and appreciate[d] Mr. Miller's remorse," an indication of his acceptance of responsibility, even if it ultimately adjudged his words to be "simply not enough." *Id.* at 57. Moreover, the district court considered the Guidelines in imposing Mr. Miller's sentence, and the Guidelines incorporate a defendant's acceptance of responsibility.

For all of the above reasons, we cannot conclude the district court's sentence was "arbitrary, capricious, whimsical, or manifestly unreasonable." *Barnes*, 890 F.3d at 915 (quotation marks omitted). Indeed, the record in this case demonstrates that the district court's sentence was not only not arbitrary or capricious, it was meticulously and thoroughly reasoned. Mr. Miller's within-Guidelines term of imprisonment is affirmed.

## B. *Special Condition of Supervised Release Regarding Drug Testing*

Mr. Miller challenges the following special condition of supervised release imposed by the district court:

> *You must submit to substance abuse testing* to determine if you have used a prohibited substance. Testing may include urine testing, the wearing of a sweat patch, a remote alcohol testing system, an alcohol monitoring technology program, and/or any form of prohibited substance screening or testing. You must not attempt to obstruct or tamper with the testing methods. You may be required to pay all, or a portion, of the costs of the testing.

ROA Vol. I, at 63 (emphasis added). Mr. Miller points out, and the government does not contest, that this condition—by using the broad term "substance abuse testing"—permits drug testing (in addition to alcohol testing), and it authorizes Mr. Miller's probation officer to determine the maximum number of drug tests to which he must submit during his term of supervised release.[2] Mr. Miller challenges these aspects of the condition on appeal.

Mr. Miller concedes that he did not object to the condition before the district court, and that our review is therefore for plain error. *See United States v. Martinez-Torres*, 795 F.3d 1233, 1236 (10th Cir. 2015) ("In the absence of proper objection [to a special condition of supervised release], . . . we review only for plain error."). To establish plain error, Mr. Miller "must show that (1) the district court erred, (2) the

---

[2] The special condition is actually silent on who will determine the number of tests. Thus, it could be read not to delegate that authority to Mr. Miller's probation officer, as Mr. Miller suggests, but instead as retaining that authority with the district court. We have held that "where a broad condition of supervised release is ambiguous and could be read as restricting a significant liberty interest, we construe the condition narrowly so as to avoid affecting that significant liberty interest." *United States v. Bear*, 769 F.3d 1221, 1230 (10th Cir. 2014) (interpreting ambiguous supervised-release condition so as to not impose invasive medical and psychiatric treatments).

But the government did not argue in its briefing that the condition is ambiguous, nor did it propose an alternative interpretation. Indeed, it was only in response to this court's questioning at oral argument that the government acknowledged that an alternative interpretation was possible. Oral Arg. at 21:18–21:42. Moreover, as explained *infra*, the condition, as interpreted by Mr. Miller, does not restrict a significant liberty interest. We accordingly construe the condition in the manner agreed upon by the parties in their briefing—*i.e.*, as delegating authority to Mr. Miller's probation officer to determine the maximum number of drug tests to which he must submit.

error was plain, (3) the error affected substantial rights, and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *United States v. Munoz*, 812 F.3d 809, 813 (10th Cir. 2016).

## 1. General Legal Standards

The Sentencing Guidelines elaborate mandatory, discretionary, "standard," and "special" conditions of supervised release. U.S.S.G. § 5D1.3. Title 18 U.S.C. § 3583(d) sets forth the standards for imposing special conditions of supervised release. It provides, in pertinent part:

> The court may order, as a further condition of supervised release, to the extent that such condition—
>
> (1) is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);
>
> (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and
>
> (3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a);
>
> any condition . . . it considers to be appropriate.

18 U.S.C. § 3583(d).

> The cross-referenced § 3553(a) factors are:
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed . . .
>
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant; and

17

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a).

**2. Plain Error Analysis**

### a. *Prong one: Whether the district court erred*

To reiterate, Mr. Miller claims the district court's imposition of the challenged drug-testing condition was error for three reasons. First, he argues that the delegation of authority to probation contravenes 18 U.S.C. § 3853(d). Second, he contends that the delegation of authority to probation contravenes Article III. Finally, he argues that the district court erred in failing to make findings on the record supporting the condition. We address each argument in turn.

#### i. Statutory delegation error

Mr. Miller's statutory theory of error is that the special condition violates 18 U.S.C. § 3583(d). This provision provides, in relevant part:

The court shall . . . order, as an explicit condition of supervised release, that the defendant refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of release on supervised release and at least 2 periodic drug tests thereafter (*as determined by the court*) for use of a controlled substance. The condition stated in the preceding sentence may be ameliorated or suspended by the court as provided in section 3563(a)(4).

18 U.S.C. § 3583(d) (emphasis added).[3] Mr. Miller contends that the language "as determined by the court" contained in this provision "plainly evinces a congressional intent that the district court determine the number of drug tests to which defendants are subject following the initial test within 15 days of release." Aplt. Br. at 12.

A number of Courts of Appeals have agreed, interpreting the language "as determined by the court" in the statute (and corresponding guideline) to mean that a sentencing court may not allow the probation department to determine the maximum number of drug tests to which a defendant must submit during a term of supervised release. The Seventh Circuit considered this issue in *United States v. Bonanno*, holding that "18 U.S.C. § 3583(d) requires that *the court* determine the number of drug tests to which the defendants must submit." 146 F.3d 502, 511 (7th Cir. 1998). The First Circuit agreed in *United States v. Melendez-Santana*, 353 F.3d 93 (1st Cir. 2003), *overruled on other grounds by United States v. Padilla*, 415 F.3d 211 (1st Cir. 2005) (en banc), reasoning that:

> [B]oth the statute and the Guidelines state that following the initial "drug test within 15 days of release," there must be "at least 2 periodic drug tests

---

[3] A corresponding Guidelines provision provides similarly:

> The defendant shall refrain from any unlawful use of a controlled substance and submit to one drug test within 15 days of release on supervised release and at least two periodic drug tests thereafter (*as determined by the court*) for use of a controlled substance, but the condition stated in this paragraph may be ameliorated or suspended by the court for any individual defendant if the defendant's presentence report or other reliable information indicates a low risk of future substance abuse by the defendant (*see* 18 U.S.C. § 3583(d)).

U.S.S.G. § 5D1.3(a)(4) (emphasis added).

thereafter (as determined by the court) for use of a controlled substance." 18 U.S.C. § 3583(d) (2000); U.S.S.G. § 5D1.3(a)(4). If there is any ambiguity in this text, it does not relate to the responsibility of the court to make the determination referenced in the statute. That responsibility could not be more explicit.

353 F.3d at 103. *See also United States v. Tulloch,* 380 F.3d 8, 10 (1st Cir. 2004) (reversing and remanding for resentencing where supervised release condition allowed probation officer to set the maximum number of drug tests to which defendant was required to submit).

Most recently, the Ninth Circuit joined the Seventh and First Circuits in holding that a special condition of supervised release that ordered the defendant to submit to "at least two periodic drug tests . . . as directed by the probation officer," constituted an impermissible delegation of judicial authority, in contravention of § 3583(d). *United States v. Stephens,* 424 F.3d 876, 878 (9th Cir. 2005). The Ninth Circuit explained:

We agree with the First Circuit's holdings in *Melendez–Santana* and *Tulloch,* that the statute, together with the guideline, clearly requires that the court, not the probation officer, set the maximum number of non-treatment-program drug tests to which a defendant may be subjected. Congress set the conditional minimum while assigning to the courts the responsibility of stating the maximum number of tests to be performed or to set a range for the permissible number of tests.

The district court's sentencing order . . . failed to abide by [the statute's] final requirement that the court itself determine the maximum number of drug tests. It ordered that Stephens submit to the fifteen day drug test as well as "at least two periodic drug tests thereafter, as directed by the probation officer." Under the statute, it was for the district court to determine the maximum number, not for the probation officer to direct. Having determined that number, the court could have left it to the probation officer to direct the scheduling and other details of the test. But probation officers may not be vested with unlimited discretion to order drug tests given the very real consequences that may follow therefrom. Where, as here, a probation officer can of his own

20

accord order a test, he is subjecting the defendant to the possibility of further criminal punishment. While allowing the probation officer to determine the timing of tests is a permissible administrative task, it is for the court to determine how many times a defendant may be placed in jeopardy of being tested.

*Id.* at 882–83.

We agree with Mr. Miller and with our sibling circuits. "In construing a federal statute, we give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive." *Ben Ezra, Weinstein, & Co., Inc. v. Am. Online Inc.*, 206 F.3d 980, 984 (10th Cir. 2000) (internal quotation marks omitted). Here, the language provided in the statute, together with the corresponding guideline, is clear: the district court must set the maximum number of non-treatment-program drug tests to which a defendant may be subjected. The district court therefore erred in delegating this authority to Mr. Miller's probation officer.

The government responds to Mr. Miller's statutory error argument by asserting that the statutory language "as determined by the court" in § 3583(d) "does not mean that Congress commanded that *only* a district court could 'determine[]' the number of drug tests." Aple. Br. at 17–18. The government does not cite any cases that have adopted its proposed interpretation.[4] Instead it (1) cites to the "background rule," which states that "'[a] probation officer shall . . . perform any other duty that the

_____

[4] Although the government does not cite to it, at least one federal court has adopted its preferred interpretation of § 3583(d)—*United States v. Smith*, 45 F.Supp.2d 914 (M.D. Ala. 1999). For the reasons discussed, however, we disagree.

21

court may designate,'" *id.* at 18 (ellipsis in original) (quoting 18 U.S.C. § 3603(10)); and (2) makes the policy argument that, because probation officers interact with defendants far more frequently than does the judge during the defendant's term of supervised release, it "makes little sense" to restrict the district court's authority to delegate to probation decisions about a defendant's drug-testing during this period. *Id.*; *see also id.* (discussing the "common sense intuition" that the probation officer is "better positioned to determine rehabilitative needs"). The government asserts that if Congress intended to curtail the district court's power to delegate to probation, "it would have done so with clearer language." *Id.*

The government's arguments are unavailing. The government's proposed interpretation of § 3583(d) to allow probation officers, as well as courts, to determine a defendant's maximum number of drug tests contravenes the plain language of that provision. First, to read the language "as determined by the court" as not excluding probation from this decision-making authority would flout one of our "well-established canon[s] of statutory construction—the negative-implication canon (*i.e.*, the canon *expressio unius est exclusio alterius*)," which "provides that the 'expressi[on] [of] one item of [an] associated group or series excludes another left unmentioned.'" *Navajo Nation v. Dalley*, 896 F.3d 1196, 1213 (10th Cir. 2018) (alterations in original) (quoting *N.L.R.B. v. SW Gen., Inc.*, 137 S. Ct. 929, 940 (2017)). The "background rule" found in 18 U.S.C. § 3606(10) does not alter this conclusion, due to another construction canon. Specifically, it is a "well established canon of statutory interpretation . . . 'that the specific governs the general.'" *RadLAX*

22

*Gateway Hotel, LLC v. Amalgamated Ban*k, 566 U.S. 639, 645 (2012) (quoting

*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992)). The specific rule

provided in § 3583(d) cannot give way to the background rule that district courts may

generally delegate responsibilities to probation officers. We accordingly reject the

government's invitation to use the general language of 18 U.S.C. § 3606(10) as

justification for ignoring § 3583(d)'s plain, specific text.[5]

The government's policy arguments also fail. Even if this court agreed with

the government's policy arguments—*i.e.*, that it would make more "common sense"

to permit probation officers to make such drug-testing determinations—that would

not give us license to interpret a statute contrary to its plain language. Moreover, if a

district court wishes to delegate some authority to probation on this matter, then it

may do so, consistently with the statute's language, by specifying a range of drug

tests to be performed by probation, or by specifying a maximum number of drug tests

that probation may not exceed. *See Melendez-Santana*, 353 F.3d at 103 (interpreting

§ 3583(d) as authorizing courts to specify a range of substance abuse testing within

which probation officers may exercise discretion); *see also United States v. Guy*, 174

F.3d 859, 862 (7th Cir.1999) (concluding that a condition requiring the defendant to

---

[5] Mr. Miller argues the government's interpretation of the statute should be rejected because it would render meaningless the "as determined by the court" language of § 3583(d). Aplt. Reply Br. at 5. He argues that "[i]t would not have been lost on Congress that district courts already had authority to order drug testing." *Id.* Even if Mr. Miller's superfluousness argument may have merit, the canons of statutory construction explained *supra* are more clearly applicable here, and they suffice to lay the government's counterarguments to rest.

submit to "random drug tests as ordered by the Probation Office, not to exceed 104 tests per year[,]" did not constitute plain error). Thus, to the extent the government makes a fair policy point that probation officers are better positioned to decide the precise number of drug tests needed to meet a defendant's rehabilitative needs, the authority of district courts to "set a range of drug tests to be performed pursuant to the statutory language meets this practical concern." *Melendez-Santana*, 353 F.3d at 104.

For these reasons, we join our sibling circuits in holding that under the terms of § 3583(d), district courts must determine the maximum number of non-treatment-program drug tests to which a defendant may be subjected during his term of supervised release. The district court therefore committed statutory error when it delegated this authority to Mr. Miller's probation officer.

### ii. Constitutional delegation error

Mr. Miller also claims the district court's delegation to probation was unconstitutional. Specifically, he argues that because the authority to impose punishment resides in the judiciary, the district court violated Article III when it delegated to probation the authority to determine the upper limit of his drug testing.

"Article III of the United States Constitution confers the authority to impose punishment on the judiciary, and the judiciary may not delegate that authority to a nonjudicial officer." *United States v. Cabral*, 926 F.3d 687, 697 (10th Cir. 2019) (quotation marks omitted).

24

In an improper-delegation challenge to a supervised-release condition, we distinguish between permissible delegations that merely task the probation officer with performing ministerial or support services related to the punishment imposed and impermissible delegations that allow the officer to decide the nature or extent of the defendant's punishment. This inquiry turns on the liberty interest affected by the probation officer's discretion. Thus, allowing a probation officer to make the decision to restrict a defendant's significant liberty interest constitutes an improper delegation of the judicial authority to determine the nature and extent of a defendant's punishment.

*Id.* (internal quotation marks and citations omitted).

The question here is therefore whether determining the number of drug tests to which Mr. Miller must submit constitutes "ministerial or support services related to the punishment imposed" or instead constitutes a decision as to the "nature or extent" of his punishment, thereby impacting a significant liberty interest. *Id.* (quotation marks omitted). For the reasons explained herein, we hold that the district court's delegation did not amount to constitutional error. In so holding, we are guided by our precedent which, although not including caselaw directly on point, makes clear that the special drug-testing condition imposed in this case does not rise to the level of implicating a significant liberty interest. We are also swayed by the decision of the First Circuit when presented with a virtually identical issue.

In *United States v. Begay*, we held that polygraph testing did not involve a significant restriction on the defendant's liberty interests where, regardless of whether the restriction was in place, he would be required to undergo sex offender treatment and meet with his probation officer. 631 F.3d 1168, 1175–76 (10th Cir. 2011). We noted that although the burden imposed by the polygraph testing "may be

25

invasive and anxiety-provoking," it did not rise to the level of "infring[ing] upon fundamental liberty interests, such as familial association." *Id.* at 1175. Similarly, in *United States v. Bear*, we held that a delegation did not implicate the defendant's significant liberty interests, and therefore was not unconstitutional, where probation could not require the defendant to submit to "residential treatment, penile plethysmograph testing, or the involuntary administration of psychotropic drugs." 769 F.3d 1221, 1230–31 (10th Cir. 2014); *United States v. Mike*, 632 F.3d 686, 696 (10th Cir. 2011) (holding that "any condition that affects a significant liberty interest, such as one requiring the defendant to participate in residential treatment, or undergo penile plethysmographic testing," may not be delegated to probation (citations omitted)). *Cf. Cabral*, 926 F.3d at 698–99 (holding a delegation of decision-making authority to probation unconstitutional where the decision could "infringe on a wide variety of liberty interests," such as the defendant's "fundamental right of familial association," or could impose "occupational restrictions," which we have "repeatedly held . . . implicate liberty interests").

Here, the decision delegated to Mr. Miller's probation officer—*i.e.*, to determine the number of drug tests to which he must submit—does not restrict a significant liberty interest. No occupational right or right to familial association is burdened, for example, nor does probation have authority to determine whether Mr. Miller submits to residential treatment, penile plethysmograph testing, or the involuntary administration of psychotropic drugs. Further, even without the drug-testing special condition, Mr. Miller would be required (under those conditions of his

26

supervised release to which he does not object) to refrain from alcohol and drug use and to submit to alcohol testing. *See* ROA Vol. I, at 61 (listing as mandatory conditions of supervised release that Mr. Miller "must not commit another federal, state, or local crime" and "must refrain from any unlawful use of a controlled substance"); *id.* at 63 (imposing as a special condition of supervised release that Mr. Miller "must not use or possess alcohol"); Aplt. Br. at 14 (stating that Mr. Miller "challenges the special condition authorizing substance abuse testing with respect to drug testing that may be required by the probation officer, *but does not challenge it insofar as it requires him to submit to alcohol testing*" (emphasis added)).

Although Mr. Miller correctly notes that his failure to comply with the drug-testing condition would lead to an additional term of imprisonment, *see* 18 U.S.C. § 3583(g)(3) ("If the defendant . . . refuses to comply with drug testing imposed as a condition of supervised release . . . the court shall revoke the term of supervised release and require the defendant to serve a term of imprisonment not to exceed the maximum term of imprisonment authorized under subsection (e)(3)."), the ultimate revocation determination, and the decision as to the length of the resulting imprisonment term, are not delegated to probation and instead remain with the district court. Moreover, while actual imprisonment would of course restrict Mr. Miller's significant liberty interests, the drug-testing condition itself does not create such a restriction; rather, imprisonment is contingent on Mr. Miller's refusal to comply with the condition. *See id.*

27

The decision of the First Circuit in *Padilla*, when confronted with the same challenge, is also instructive. There, the court noted that the requirement in § 3583(d) that an Article III judge decide the maximum number of drug tests is not a constitutional requirement. 415 F.3d at 222. More specifically, the *Padilla* court held that

> [t]he placement of authority to set the maximum number of drug tests in the hands of the judge is a statutory choice; it is neither a matter of constitutional necessity nor a condition essential to the fair administration of justice. Thus, Article III is implicated only by way of the statutorily prohibited delegation[.]

*Id.* (footnote omitted).[6] Mr. Miller cites no authority supporting his contrary position.

Because we are persuaded by the reasoning of the First Circuit in *Padilla*, we hold that the delegation of authority to probation to determine the number of drug tests to which Mr. Miller must submit was not an unconstitutional delegation of the district court's judicial authority. Put another way, the district court did not commit constitutional error.

---

[6] In *United States v. Stephens*, 424 F.3d 876, 878–82 (9th Cir. 2005), the Ninth Circuit also considered a constitutional-delegation challenge to a drug-testing condition similar to the one at issue here. But conflicting statements in the decision make it unhelpful to the instant analysis. Specifically, the Ninth Circuit suggested that "how many times" a defendant will be subjected to drug testing was a decision implicating constitutional delegation concerns under Article III. *Id.* at 880. It then appears to hold that "there was no delegation of Article III judicial power regarding the primary decision of whether [the defendant] would undergo treatment," which the court stated left only the "subordinate, *statutory* issue[]"of whether the district court erred in failing to specify the maximum number of non-treatment-program drug tests to which the defendant would be required to submit. *Id.* at 882 (emphasis added). This inconsistency in the *Stephens* opinion makes its holding unclear.

28

### iii. Failure to make supporting findings

Mr. Miller argues that the district court further erred by failing to make findings supporting its imposition of the special condition. We agree.

"When [] neither the Sentencing Commission nor Congress has required or recommended a condition, we expect the sentencing court to provide a reasoned basis for applying the condition to the specific defendant before the court." *Martinez-Torres*, 795 F.3d at 1237; *see also United States v. Burns*, 775 F.3d 1221, 1223 (10th Cir. 2014) ("Our precedents unambiguously require supporting findings when courts impose special conditions of supervised release."); *United States v. Hahn*, 551 F.3d 977, 982 (10th Cir. 2008) (explaining that the sentencing court "is required to give reasons on the record for the imposition of special conditions of supervised release" so that a reviewing court may consider the substantive reasonableness of the conditions). The district court must make an "individualized assessment" before imposing special conditions. *Martinez-Torres*, 795 F.3d at 1237–38. However, the "sentencing court need not provide reasons for each special condition that it imposes; rather, it must only provide a generalized statement of its reasoning." *Mike¸* 632 F.3d at 693 (internal quotation marks omitted).

Here, the district court did not explain why it imposed a special condition authorizing Mr. Miller's probation officer to require him to submit to non-treatment-program-based drug testing. The government concedes that the district court neither provided particular reasons for imposing this condition, nor made a generalized

29

statement of its reasoning. Because the district court did not make the requisite findings—a point which the government does not dispute—the district court erred.

### b. Prong two: Whether the errors were plain

Mr. Miller next asserts that the district court's errors were plain. For an error to be plain, it must be an error that "is clear or obvious under current, well-settled law." *United States v. DeChristopher*, 695 F.3d 1082, 1091 (10th Cir. 2012) (quotation marks omitted). Typically for an error "to be contrary to well-settled law, either the Supreme Court or this court must have addressed the issue." *Id.* (quotation marks omitted). Although the failure to cite Supreme Court or Tenth Circuit authority that has clearly endorsed the appellant's view is "an omission that ordinarily . . . would fatally undercut [his] attempt to show plain error," *United States v. Finnesy*, 953 F.3d 675, 702 n.14 (10th Cir. 2020), we have held that "the absence of circuit precedent [does not] prevent[] the clearly erroneous application of statutory law from being plain error," *United States v. Brown*, 316 F.3d 1151, 1158 (10th Cir. 2003) (alterations in original) (quoting *United States v. Evans*, 155 F.3d 245, 252 (3d Cir.1998)).

As noted above, the purported constitutional delegation error was not in fact error. We therefore need not analyze the remaining elements of the plain-error standard with regard to that argument. *See United States v. Gantt*, 679 F.3d 1240, 1246 (10th Cir. 2012) ("Because all four [plain error] requirements must be met, the failure of any one will foreclose relief and the others need not be addressed."). As

explained below, we conclude that the statutory delegation and failure-to-make-findings errors were plain.

   i. Statutory delegation error

Mr. Miller argues that the district court's delegation of authority to his probation officer was plainly erroneous because it violates clear statutory language. We agree.

First, and most significantly, the language of § 3583(d) is not subject to differing reasonable interpretations. As discussed *supra*, multiple Courts of Appeals have interpreted the statutory language "the defendant shall . . . submit to one drug test within 15 days of release . . . and at least two periodic drug tests thereafter (as determined by the court)" in § 3583(d) to mean what it says: *i.e.*, that the number of drug tests, beyond the three required by the statute, must be "determined by the court." The government cites no caselaw holding otherwise. Further, the sole circuit to consider whether this statutory delegation error was plain held that it was. *See Melendez-Santana*, 353 F.3d at 106.[7]

The government counters that the error was not plain because Mr. Miller "identifies no cases from this circuit or from the Supreme Court addressing this condition and these issues." Aple. Br. at 20. But as indicated above, "the absence of

---

[7] The *Melendez-Santana* court held both that the statutory error committed by the district court was (1) plain (satisfying the second element of plain-error review), and (2) satisfied the third and fourth elements of the plain-error test. The first holding was upheld; the second was overruled in an *en banc* decision in *United States v. Padilla*, 415 F.3d 211 (1st Cir. 2005).

circuit precedent [does not] prevent[] the clearly erroneous application of statutory law from being plain error." *Brown*, 316 F.3d at 1158 (alterations in original) (quoting *Evans*, 155 F.3d at 252). Here, the statute expressly vests the power to determine the maximum number of drug tests in the district court and only the district court.

The government further asserts that the "one Tenth Circuit case [it] could find where a defendant challenged a similar condition on delegation grounds" was *United States v. Lopez-Casillas*, and there, this court "rejected that attack." Aple. Br. at 20 (citing *United States v. Lopez-Casillas*, 750 F. App'x 766, 767 (10th Cir. 2019) (unpublished)). But the defendant there did not challenge his supervised-release condition on the ground that it violated § 3583. Indeed, § 3583 is not mentioned, let alone interpreted, in that unpublished decision. Because the supervised release condition at issue is not quoted in that decision, it is uncertain what authority was delegated to the probation officer. *Lopez-Casillas* is therefore of little help to the present inquiry.

For the above reasons, we hold that the district court's statutory delegation error was plain.

### ii. Failure to make supporting findings

The government does not appear to argue that the district court's error in failing to make findings on the record supporting the challenged condition was not plain. Nor could it do so successfully, as this requirement "is clear . . . under current, well-settled law." *DeChristopher*, 695 F.3d at 1091 (quotation marks omitted). *See,*

32

*e.g.*, *United States v. Koch*, No. 19-8034, 2020 WL 5987494 (10th Cir. Oct. 9, 2020);[8] *Martinez-Torres*, 795 F.3d at 1237; *Burns*, 775 F.3d at 1223; *United States v. Smith,* 606 F.3d 1270, 1283 (10th Cir. 2010); *Hahn*, 551 F.3d at 982; *United States v. Edgin*, 92 F.3d 1044, 1049 (10th Cir. 1996). We hold that this error was plain.

### c. *Prong three: Whether the errors affected Mr. Miller's substantial rights*

Turning to the third prong of the plain-error test, we must determine whether the errors affected Mr. Miller's substantial rights. "An error affects substantial rights if there is a reasonable probability that the error affected the outcome of the proceedings." *Burns*, 775 F.3d at 1224. "In the sentencing context, we ask: Is there a reasonable probability that but for the court's error, [the defendant] would have received a lesser sentence?" *Id.*[9]

---

[8] Our recent decision in *United States v. Koch*, concludes that the defendant met the plain error test where the district court failed to make findings supporting a special condition of supervised release that impinged on the defendant's First Amendment rights. No. 19-8034, 2020 WL 5987494, at *1-7 (10th Cir. Oct. 9, 2020). As discussed, the special condition here does not impact Mr. Miller's constitutional rights.

[9] Mr. Miller asserts that "[t]his Court's plain-error precedent dictates that an effect on substantial rights is established by showing 'doubt' about the sentencing outcome." Aplt. Reply Br. at 10 (quoting *United States v. Hasan*, 526 F.3d 653, 665 (10th Cir. 2008)). To the extent Mr. Miller suggests that our *Hasan* decision sets forth a lesser burden on the appellant under the third prong of the plain-error test, his contention is mistaken. *Hasan* uses the language of "doubt" in the same breath as it explains the "reasonable probability" standard discussed above. *Hasan*, 526 F.3d at 664–65. More specifically, we explained in that case that the district court's "apparently conflicting factual findings" pertaining to the error at issue caused us to "doubt the outcome" of a remand. *Id.* We then went on to hold that "[u]nder these circumstances, and in the current absence of a ruling from the district court reconciling the two sets of seemingly inconsistent factual findings, we believe

Here, Mr. Miller must show that, on remand, there is a reasonable probability the district court would not impose the special condition pertaining to drug testing, or that it would impose it in a less restrictive way. *See United States v. Rosales-Miranda*, 755 F.3d 1253, 1258 (10th Cir. 2014). The right affected by the district court's delegation error is Mr. Miller's right to have the district court, rather than the probation officer, determine the maximum number of drug tests to which Mr. Miller may be subjected during his term of supervised release. Mr. Miller argues the district court's failure to make the requisite supporting findings for the special drug-testing condition suggests the district court may not have imposed the condition at all. For the reasons explained below, we conclude that neither error affected Mr. Miller's substantial rights.

     i.   <u>Delegation to probation to determine maximum number of drug tests</u>

To determine whether the district court's delegation error satisfies the third prong of the plain-error test, the relevant question is whether there is a reasonable probability that granting this discretion to probation rendered Mr. Miller worse off. In other words, Mr. Miller must show there is a reasonable probability that the probation officer would demand more tests than the district court would have set as the maximum to show the error affected his substantial rights. Mr. Miller cannot make this showing.

_____

Mr. Hasan *has indeed shown a reasonable probability* that his motion . . . would have been granted," thereby warranting remand. *Id.* at 665 (emphasis added).

34

First, as the government notes, multiple circuits have held that defendants'

challenges to similar testing conditions have failed plain-error review under the

substantial rights prong. For example, the First Circuit, sitting *en banc*, explained:

> The case at hand is peculiar in that we are dealing with two unknown
> variables: the limit the district court would have set on drug tests and
> the number of tests that the probation officer will demand. It is,
> therefore, nearly impossible for Padilla to show a reasonable probability
> that he is worse off because the probation officer, rather than the district
> court, has the power to determine the maximum number of drug tests.
> Under these circumstances, we do not see how Padilla can demonstrate
> that, but for the delegation error, the supervised release condition likely
> would have been more favorable to him. This, in turn, undercuts his
> argument that the error should be corrected. *See Jones v. United States*,
> 527 U.S. 373, 394–95 (1999) ("Where the effect of an alleged error is so
> uncertain, a defendant cannot meet his burden of showing that the error
> actually affected his substantial rights.").

*Padilla*, 415 F.3d at 221. The First Circuit's reasoning is equally applicable here. "It

is . . . nearly impossible" for Mr. Miller "to show a reasonable probability that he is

worse off because the probation officer, rather than the district court, has the power

to determine the maximum number of drug tests." *Id.* Accordingly, Mr. Miller cannot

show that "but for the delegation error, the supervised release condition likely would

have been more favorable to him." *Id.*

Similarly, in *United States v. Tejeda*, the district court entered as a special

condition of supervised release that the co-defendants "participate in a program of

testing . . . for drug and alcohol abuse, as approved by [their] supervising probation

officer[s]," and the district court did not specify the maximum number of drug tests

that the probation officers could demand. 476 F.3d 471, 472–73 (7th Cir. 2007). The

Seventh Circuit found that the district court's statutory delegation error was clearly

35

established (satisfying the second element of the plain-error standard), but that the defendants could not satisfy the third prong of plain-error review. The *Tejeda* court reasoned that, "[a]s the court said in *Padilla*, it cannot be shown that the defendant would have been better off had the judge imposed the details of the drug testing himself." *Id.* at 475.

In response to the government's arguments, Mr. Miller asserts that "[i]t is reasonably probable that on remand, the district court would decide that any need for [Mr. Miller] to be drug tested is adequately met by the mandatory drug testing condition and the substance abuse treatment condition." Aplt. Reply at 10. To the extent Mr. Miller argues the district court's imposition of the drug testing condition may have been unintentional and may not be reimposed on remand, we address this contention in the next section dealing with the failure to make findings. As to the district court's delegation error, Mr. Miller does not address the government's argument—or the persuasive authority it marshals in support thereof—that he cannot show that he is "worse off because the probation officer, rather than the district court, has the power to determine the maximum number of drug tests." *Padilla*, 415 F.3d at 221.

For these reasons, Mr. Miller cannot show that the district court's delegation of authority to probation to determine his maximum number of drug tests affected his substantial rights. Mr. Miller therefore fails to satisfy the third prong of the plain-error test with respect to the statutory delegation error, and our inquiry need proceed no further. *See Gantt*, 679 F.3d at 1246.

## ii. Failure to make supporting findings

We have held that although a district court need not provide reasons for each special condition it imposes, it must at least provide a statement of generalized reasons for why it imposed the condition. *Martinez-Torres*, 795 F.3d at 1237–38; *Mike*, 632 F.3d at 693. Should the district court fail to make such a generalized statement, however, a special condition nonetheless survives under the third prong of plain-error review if "the record reveals a basis" for the condition. *United States v. Francis*, 891 F.3d 888, 898–99 (10th Cir. 2018).

According to the government, the record reveals a basis for the special drug-testing condition because Mr. Miller's history of alcohol abuse justifies requiring drug tests. In support of this argument, the government cites to our recent decision in *United States v. Richards,* 958 F.3d 961 (10th Cir. 2020), as well as decisions of the First, Seventh, and Ninth Circuits, which acknowledge the connection between different forms of addiction or "vice." *See* Aple. Br. at 15–16 (citing *United States v. Brown*, 235 F.3d 2, 6 (1st Cir. 2000); *United States v. Paul*, 542 F.3d 596, 600 (7th Cir. 2008); *United States v. Sales*, 476 F.3d 732, 735–36 (9th Cir. 2007)). In *Richards*, the defendant was convicted of a child pornography offense, and the district court imposed special conditions of supervised release relating to substance abuse testing and treatment. 958 F.3d at 963–64. Mr. Richards objected on the ground that his past substance abuse was too remote to support these conditions. *Id.* at 965. On appeal, we held that the district court did not abuse its discretion in imposing the challenged conditions, reasoning that "[b]ased on [Mr. Richards's]

37

history and background, the district court could have reasonably concluded conditions preventing further use of drugs and alcohol will help ensure [Mr. Richards] does not trade one vice for another and that he will remain on the path to rehabilitation during his supervised release." *Id.* at 966.

Mr. Miller admits the district court could have imposed the special drug testing condition, if it had supported its decision to do so with specific findings. But he argues that the district court's failure to make such findings suggests it did not intend to impose the special drug-testing condition in the first place. *See, e.g.*, Aplt. Reply Br. at 10 ("The district court's improper and *perhaps unintentional* imposition of a third drug testing condition that has the potential to subject [him] to mandatory revocation of his supervised release and a new term of imprisonment clearly affects his substantial rights." (emphasis added)). Therefore, he argues that "[i]t is reasonably probable that on remand, the district court would decide that any need for [Mr.] Miller to be drug tested is adequately met by the mandatory drug testing condition and the substance abuse treatment condition." Aplt. Reply Br. at 10.

In support of this argument, Mr. Miller cites our decision in *Burns*, in which we held that the defendant had satisfied the third prong of plain-error review where the district court had failed to make supporting findings before imposing a special condition of supervised release. The condition at issue there required the defendant to obtain approval from probation before he could contact his daughter. We noted that "[a]t sentencing, neither the pretrial services officer nor government counsel spoke of a need to restrict Mr. Burns's right to visit his daughter." *Burns*, 775 F.3d at 1224.

Given the interest at stake—namely, an intrusion upon Mr. Burns's constitutional right to familial association—we concluded the district court's failure to make supporting findings was indicative of its probable inadvertence in imposing the condition. *See id.* at 1222 (noting that the "restriction intrudes on Mr. Burns's constitutional right to familial association"); *id.* at 1225 ("[T]he district court likely would have softened the contact restrictions if the issue had been raised."). In support of our holding, we cited a Tenth Circuit decision authored by the judge who imposed Mr. Burns's sentence in which we stated that a restriction on contact with a defendant's young relatives was unconstitutional notwithstanding the allowance of contact upon permission of a probation officer. *See id.* at 1225 & n.4 (citing *United States v. Lonjose*, 633 F.3d 1292, 1303 (10th Cir. 2011)).

It is true that certain similarities exist between the circumstances in *Burns* and the instant case. As there, here "neither the pretrial services officer nor government counsel spoke of a need" to impose the challenged condition. *See id*. But the condition at issue in *Burns* was a significantly greater intrusion on the defendant's rights than the one imposed on Mr. Miller. Contrasted with restrictions on visiting one's young child, the intrusion on Mr. Miller's rights caused by drug testing is slight. As we have already explained, the special condition here did not implicate Mr. Miller's constitutional rights. Moreover, unlike in *Burns*, we do not have caselaw from Mr. Miller's sentencing judge strongly suggesting that, had the issue been raised, the judge likely would not have imposed the challenged condition. And finally, whereas in *Burns* there was an "absence of any evidence or argument on a

39

need to protect" Mr. Burns's daughter from him, here there are compelling reasons to impose a drug-testing condition on a defendant who suffers from alcohol addiction. *See, e.g.*, *Richards*, 958 F.3d at 964–66 (upholding special conditions relating to drugs and alcohol, reasoning that "[b]ased on Defendant's history and background, the district court could have reasonably concluded conditions preventing further use of drugs and alcohol will help ensure Defendant does not trade one vice for another and that he will remain on the path to rehabilitation during his supervised release"); *Brown*, 235 F.3d at 6 (noting the relationship between the special condition imposed [abstention from alcohol] and Mr. Brown's offense of conviction [cocaine distribution], stating "it is hardly a secret that there is a tie between drug abuse and alcohol abuse"); *Paul*, 542 F.3d at 596–601 (affirming imposition of drug testing supervised-release condition for defendant with history of alcohol abuse and gambling, reasoning that that "[b]oth of those [latter] factors are consistent with an addictive personality which might well lead him to the use of illegal drugs," and "[a] regime of drug screening [would] help to ensure that [Mr. Paul] does not trade one vice for another and that he remains on the path to rehabilitation"). And the condition discourages Mr. Miller from trying new substances, thereby reducing the risk that, in an altered state in which his judgment is impaired, he will revert to alcohol use.

For these reasons, although the district court's failure to make supporting findings in *Burns* was indicative of its probable inadvertence in imposing the challenged supervised-release condition, the same is not true here. The special condition is directly related to Mr. Miller's alcohol addiction and does not violate his

40

constitutional rights. Thus, Mr. Miller has not shown a "reasonable probability that the error affected the outcome of the proceedings." *Burns*, 775 F.3d at 1224. *See Jones*, 527 U.S. at 394–95 ("Where the effect of an alleged error is so uncertain, a defendant cannot meet his burden of showing that the error actually affected his substantial rights."). Therefore, while the district court plainly erred in failing to make specific findings supporting the special condition, Mr. Miller's claim fails on the third prong of plain-error review.

>    d. *Prong four: Fairness, integrity, or public reputation of judicial proceedings*

Because the arguments Mr. Miller raises on appeal fail under the first (in the case of the constitutional-error argument) or third (in the case of the statutory delegation error and the failure to make specific findings) prongs of plain-error review, we do not analyze the final element. *See Gantt*, 679 F.3d at 1246 ("Because all four [plain error] requirements must be met, the failure of any one will foreclose relief and the others need not be addressed.").

### III. CONCLUSION

For these reasons, we **AFFIRM** the 36-month, within Guidelines sentence as substantively reasonable, and we **AFFIRM** the drug-testing special condition of supervised release as not plainly erroneous.

41